Johnathan EXUM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0311–CR–977.

Court of Appeals of Indiana.

July 27, 2004.

Transfer Denied Oct. 7, 2004.

Ellen M. O'Connor, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Johnathan Exum appeals his conviction for Murder,[1] a felony, challenging the trial court's application of the felony murder rule, set forth in Indiana Code section 35–42–1–1. Specifically, Exum argues that the death of Lawrence Duff, a co-perpetrator who participated in an attempted robbery, was not reasonably foreseeable to him, and that

---

1. Ind.Code § 35–42–1–1.

certain jury instructions were misleading, confusing, and incorrect statements of the law. Finding that Exum reasonably should have foreseen that the commission of Attempted Robbery,[2] a class B Felony, would create a situation which would expose another to the danger of death, and, thus, he was a mediate or immediate cause of the death within the meaning of the felony murder statute, and that the jury instructions were not misleading, confusing, or incorrect statements of the law, we affirm.

## FACTS

Early in the morning of August 10, 2002, Eric Johnson left his apartment at Scarborough Lake Apartments in Indianapolis, to retrieve a compact disc from his car. Upon exiting the apartment, he left the door ajar. Three men, Exum, Duff, and Bryan Brown, accosted him at gun-point and pushed him back inside his apartment.

Once inside the apartment, Brown pistol-whipped Johnson with a .45 caliber Ruger semi-automatic pistol, causing a lacerated lip and knot on Johnson's head. Brown demanded money and cocked the pistol in front of Johnson's face. Brown then entered the bedroom where Sonia Rivera was lying in a bed, and tugged at the sheets and asked, "Where's it at?" Tr. p. 45. Brown quickly left the room and placed a taller man at the door to watch her. She could not identify the man because she was not wearing her glasses. Brown returned again, repeating his question, "Where's it at?" Tr. p. 53. This time he hit Rivera on the head with the gun.

In the living room Johnson began wrestling with Duff, broke free, went into the bedroom and began struggling with Brown for control of the gun. Johnson wrestled the gun away from Brown and threw it across the room. Johnson then grabbed his .45 caliber revolver from the dresser and began shooting at Brown and Duff who were fleeing the apartment. Exum had already fled by the time that Johnson was shooting at the co-conspirators.

Johnson shot Duff twice in the left shoulder area, and one bullet penetrated his lung and aorta causing him to bleed to death at the scene. Brown was shot once, but was able to flee the complex with Exum. Johnson and Rivera left the apartment and called 911 from their car. The officers responding to the call saw two men running in the area and eventually caught Exum and Brown.

Johnson was taken for treatment and arrested for an outstanding warrant. While at jail that day, Johnson identified Exum as one of the participants of the attack. Johnson gave consent for the police to search his apartment and the police found 58.7 grams of cocaine, three scales, a bong, and baggie corners. He was charged with dealing and possession of cocaine. He subsequently received immunity for his testimony at Exum's trial.

At trial, Exum was convicted of felony murder, attempted robbery, and resisting law enforcement,[3] a class A misdemeanor. Thereafter, the court imposed the minimum sentence of forty-five years, merged count three, attempted robbery, with count one, felony murder, thereby vacating the judgment of the conviction for count three, and sentenced Exum to 365 days for resisting law enforcement, to be served concurrently with the sentence for felony murder. Exum now appeals only the felony murder conviction.

## DISCUSSION AND DECISION

Exum argues that the death of Duff was not reasonably foreseeable to him and that

---

**2.** Ind.Code § 35–41–5–1; § 35–42–5–1.

**3.** Ind.Code § 35–44–3–3.

certain jury instructions were misleading, confusing, and incorrect statements of the law regarding the interpretation and application of the felony murder rule. Specifically, Exum argues that, (1) because his participation in the events that led to the death were limited and that he fled prior to the shooting, he did not create a situation so dangerous that he would be a mediate cause of the death and he could not have reasonably foreseen the death; (2) a jury instruction that explained that "[t]he language 'kills another human being while committing' does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person" incorrectly impressed upon the jury that a defendant may be legally culpable for any death occurring during the commission of a felony even when he was not the killer, and (3) that an instruction which stated, "[i]f the State proves beyond a reasonable doubt that the defendant knowingly attempted to commit the felony of Robbery, and the alleged co-defendant's participation in the alleged Attempt[ed] Robbery, then you may find the defendant guilty of felony murder," was incorrect for failing to explain that the death must be reasonably foreseeable under the circumstances. Appellant's Br. p. 15–17.

### I. Reasonable Foreseeability

Addressing these arguments separately, Exum first argues that his conviction may not stand because Duff's death was not reasonably foreseeable to him under the circumstances. Specifically, Exum argues that he was not armed, he did not physically assault either of the victims of the armed robbery, and he had fled prior to the shooting of Duff, and, therefore, the death was not reasonably foreseeable to him. Moreover, Exum maintains that the evidence failed to show that he contributed or was in any way responsible for Duff's death.

In essence, Exum's arguments display a challenge to the sufficiency of the evidence. Our standard of review with regard to sufficiency claims is well settled. We neither weigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence favorable to the verdict and all reasonable inferences which can be drawn therefrom. *Newman v. State*, 677 N.E.2d 590, 593 (Ind.Ct.App. 1997). If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.*

Our legislature has pronounced that "A person who ... kills another human being while committing or attempting to commit ... robbery ... commits murder, a felony." Ind.Code § 35–42–1–1(2). In its interpretation of this statute, our supreme court has determined that the State need not prove intent to kill, only the intent to commit the underlying felony. *Vance v. State*, 620 N.E.2d 687, 690 (Ind.1993). Our supreme court further held in *Palmer v. State*, 704 N.E.2d 124, 126 (Ind.1999), that the statutory language "kills another human being while committing" does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person. Citing, I.C. § 35–42–1–1(2); *see also, Jenkins v. State*, 726 N.E.2d 268 (Ind. 2000) (co-perpetrator was shot and killed by robbery victim and the defendant was convicted of felony murder for that death). The *Palmer* court used this interpretation of the felony murder statute to uphold a conviction of Palmer for the murder of his co-perpetrator who had been shot by a law

enforcement officer. Our supreme court explained:

> Our Court of Appeals has correctly observed: [A] person who commits or attempts to commit one of the offenses designated in the felony-murder statute is criminally responsible for a homicide which results from the act of one who was not a participant in the original criminal activity. Where the accused reasonably should have ... foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation which would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation of such a dangerous situation is an intermediary, secondary, or medium in effecting or bringing about the death of the victim. There, the situation is a mediate contribution to the victim's killing.

*Id.* at 126 (citing, *Sheckles v. State,* 684 N.E.2d 201, 205 (Ind.Ct.App.1997)).

■ In the situation before us today, Exum—with his two co-perpetrators—forced a man into his apartment at gunpoint and attempted to rob him by force. The trial court found that Exum was not the leader of the robbery, was not carrying a firearm, and may not have been in the apartment when the shooting that caused the death of Duff occurred. Tr. p. 710. On the other hand, the evidence shows that Exum illegally entered the apartment, knowing that Brown was brandishing a firearm and knowing that a robbery had been planned. He was present when Brown demanded property from Johnson, and there was testimony that he may have guarded Rivera while she was in the bedroom. In addition to these acts that Exum committed personally, Exum is also crimi-

nally liable for the actions of his co-perpetrators, which included using a deadly weapon in an attempt to commit robbery. *See* Ind.Code § 35–41–2–4; *Harden v. State,* 441 N.E.2d 215 (Ind.1982), *cert. denied,* 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998 (1983) (the acts of one accomplice are imputed to all others and an accomplice is criminally liable for everything done by his confederates which was a probable and natural consequence of their common plan). The jury received evidence to these facts, heard instructions in regards to the applicable law, and convicted Exum of attempted robbery, which he does not challenge.

A victim of a forcible felony or unlawful entry of or attack on his dwelling fighting back with deadly force is such a natural consequence that it has been justified by our State's legislature. *See* Ind.Code § 35–41–3–2. Furthermore, our State's constitution gives the people a right to bear arms "for the defense of themselves." Ind. Const. Art. I § 32. For these reasons, we find that there is sufficient evidence that Exum should have reasonably foreseen that the crime of attempted robbery with deadly force was likely to create a situation where the death of one of his co-perpetrators from the victim's act of self-defense or defense of his dwelling would occur. Also, Exum was an active participant in the robbery, and as a result of that robbery, Duff was killed. Therefore, despite the fact that Exum was not armed, and may have fled shortly prior to the shooting, he was a mediate cause of Duff's death. For this reason, we also find that there is sufficient evidence that he contributed to the death of Duff while committing attempted robbery with a deadly weapon.[4]

---

4. As an aside, we note that Exum makes the argument that the interpretation that we ap-

ply to the felony murder statute today is not a proper interpretation of that statute. Specifi-

## II. Jury Instructions

Exum argues that jury instructions number 38 and 39 were erroneous. Specifically, he argues that instruction number 38 misled the jury by giving them the impression that the felony murder statute expressly states that a defendant may be legally culpable for any death occurring in the commission of a felony, even when he was not the killer, and that instruction number 39 lacked necessary language that the death had to be reasonably foreseeable under the circumstances. Appellant's Br. 15–17.

 In analyzing Exum's arguments we note that instructing the jury lies within the sole discretion of the trial court. *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind.1996). We will reverse only when the instructions amount to an abuse of discretion. *Id.* Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.* Before a defendant is entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights. *Hollowell v. State*, 707 N.E.2d 1014, 1023 (Ind.Ct.App. 1999).

### A. Jury Instruction Number 38

██ Exum's first contention that instruction number 38 misled the jury depends upon his arguments that the interpretation that the *Palmer* court has given the felony murder statute is erroneous. However, we are guided by the precepts of stare decisis to acknowledge the interpretation afforded the felony murder statute by the *Palmer* court that was thereafter followed by the *Jenkins* court. As our supreme court noted in *Durham ex rel. Estate of Wade v. U–Haul Int'l,* 745 N.E.2d 755, 759 (Ind.2001):

> [T]here is no constitutional bar to revisiting judicial authority interpreting a statute. But if a line of decisions of this Court has given a statute the same construction and the legislature has not sought to change the relevant parts of the legislation, the usual reasons supporting adherence to precedent are reinforced by the strong probability that the courts have correctly interpreted the will of the legislature.

That said, jury instruction number 38, which reads:

> The language "kills another human being while committing" does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person,

is a direct quote from *Palmer* that accurately reflects the holding in that case. 704 N.E.2d 124, 126. Our legislature has not changed the relevant parts of that statute since the *Palmer* and *Jenkins* decisions in 1999 and 2000 respectively. Therefore, we find that jury instruction number 38 could not have misled the jury in these circumstances, and it was not an abuse of discretion for the trial court to have given it.

cally, he argues that strict construction of Indiana Code section 35–42–1–1 requires that either the felon himself would have had to have caused the killing personally, as demonstrated by the language "[a] person who ... kills another human being while committing," or that one of his accomplices would have had to have caused the killing according to Indiana Code section 35–41–2–4. These arguments were represented by a dissent to *Palmer* written by Sullivan, J. and joined by Shepard, C.J. However, we apply the interpretation that was given the felony murder statute by the majority of our supreme court in *Palmer,* and our legislature has seemingly acquiesced to that interpretation by not rejecting it.

### B. Jury Instruction Number 39

■ Finally, Exum challenges jury instruction number 39 because it fails to state the requirement that the death had to be reasonably foreseeable under the circumstances. Inasmuch as we have already determined that the death of Duff was reasonably foreseeable under the circumstances because it could be deemed a natural consequence of the robbery, we reject Exum's challenge to the jury instruction on this basis and find no error.

### CONCLUSION

In light of our discussion of the issues set forth above, we conclude that (1) the death of Duff was reasonably foreseeable to Exum; (2) Exum contributed to that death; and (3) jury instructions number 38 and 39 were neither misleading, confusing, or misstatements of the law, nor did they prejudice Exum's substantial rights.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.