# FOR PUBLICATION

ATTORNEYS FOR APPELLANT
BLAKE LAYMAN:

**CARA SCHAEFER WIENEKE**
**JOEL C. WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEY FOR APPELLANT
LEVI SPARKS:

**VINCENT M. CAMPITI**
Nemeth Feeney Masters & Campiti, P.C.
South Bend, Indiana

ATTORNEYS FOR AMICI CURIAE:
Juvenile Law Center, Center on Wrongful
Convictions of Youth and Children's Law
Center, Inc.

**SCOTT F. BIENIEK**
Jeffrey A. Boggess, P.C.
Greencastle, Indiana

**MARSHA L. LEVICK**
Juvenile Law Center
Philadelphia, Pennsylvania

ATTORNEYS FOR AMICI CURIAE:
Indiana Public Defender Council

**JOEL M. SCHUMM**
Indianapolis, Indiana

**MATTHEW HAYES**
**DANIELLE TEAGARDEN**
**SHEA THOMPSON**
Certified Legal Interns
Indianapolis, Indiana

**LARRY LANDIS**
Indiana Public Defender Council
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Sep 12 2014, 10:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BLAKE LAYMAN, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 20A04-1310-CR-518 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |
| | ) |
| | ) |
| LEVI SPARKS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff | ) |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1210-MR-7
Cause No. 20C01-1210-MR-5

**September 12, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

In this consolidated appeal, Blake Layman and Levi Sparks appeal their convictions for felony murder[1] as well as the sentences imposed thereon.

We affirm in part and remand with instructions.

**Issues**

Layman and Sparks raise the following issues:

I.      Whether their convictions and sentences violate the United States and Indiana Constitutions;

II.     Whether Indiana Code section 35-42-1-1, the felony murder statute, was properly applied in this case; and

III.    Whether their sentences are inappropriate.

Sparks also argues that there is insufficient evidence to support his felony murder conviction.

**Facts and Procedural History**

On October 3, 2012, sixteen-year-old Layman, seventeen-year-old Sparks, and sixteen-year-old Jose Quiroz decided to commit burglary. They searched Quiroz's neighborhood for a home where the residents were away because they were aware that the presence of a homeowner during a burglary can result in more serious legal charges and injuries. Sparks knocked on the door of the first house the young men targeted. When they heard dogs barking, the young men left. Someone was home at the second house they targeted.

---

[1] Ind. Code § 35-42-1-1.

3

Rodney Scott lived in the third house they targeted. He was upstairs taking a nap early that afternoon and did not hear the young men knock at his front door. Believing that no one was home at Scott's house, Layman, Sparks, and Quiroz decided to break in. They contacted their friends, eighteen-year-old Anthony Sharp and twenty-one-year-old Danzele Johnson to help them.

Later that afternoon, Layman, Quiroz, Johnson, and Sharp walked around to the back of Scott's house while Sparks remained outside with a cell phone so that he could contact them if the police or another visitor arrived at Scott's house. The four men kicked in the steel back door and entered the house. Sharp grabbed a knife from the knife block in Scott's kitchen, and one of the young men took Scott's watch and wallet from the kitchen counter.

Scott was waking up from his nap when he heard a "boom . . . and [his] whole house just shook." Tr. p. 1058. After hearing a second loud boom and feeling a second vibration, he remembered that there had been a burglary in the neighborhood earlier that week. Scott grabbed his handgun and ran loudly down the stairs to scare away any intruders. When he reached the bottom of the stairs, he saw Sharp run out the back door. Scott then turned and saw two of the young men standing at a downstairs bedroom door. Scott was standing between them and the kitchen door so they were unable to flee. Scott, who was afraid of being injured or killed, and who was concerned that Sharp would return, decided to frighten the young men into remaining in the bedroom by firing his handgun at the floor. When the young men ran into the bedroom closet, Scott used his cell phone to call 911.

4

While Scott was on the phone with the dispatcher, the closet door opened. Scott shouted at the men to keep the door closed. When the door opened again, Scott saw Johnson fall to the floor. Quiroz, whom Scott now recognized as a neighbor, told Scott that Johnson had been shot. Thereafter, Layman yelled out that he had also been shot. He asked Scott if he could come out and lay on the bed. Scott told Layman to get back in the closet. When the police arrived, Quiroz flew out of the closet, pushed over a piece of furniture, and crashed through the bedroom window. While one of the officers pursued Quiroz, other officers entered the house and arrested Layman, who was treated for his leg wound. Johnson died at the scene from a gunshot wound.

Layman, Sparks, Sharp, and Quiroz were all charged with felony murder. Pursuant to Indiana Code section 31-30-1-4, Indiana's Automatic Waiver Statute, felony murder charges were filed against Layman, Sparks, and Quiroz in the Elkhart Circuit Court, where they would all be tried as adults. Quiroz pleaded guilty, and the trial court sentenced him to fifty-five years imprisonment with ten years suspended to probation. Layman, Sparks, and Sharp were all tried together and convicted of felony murder. The trial court sentenced Layman to fifty-five years imprisonment and Sparks to fifty years imprisonment. Layman and Sparks appeal their convictions and sentences.

**Discussion and Decision**

I. Constitutionality of Convictions and Sentences

Layman and Sparks raise several constitutional challenges to their convictions and sentences. Specifically, they argue that Indiana Code section 31-30-1-4, which requires

5

adult-court jurisdiction over their offenses, is unconstitutional on its face and as applied, violates their right to equal protection under the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause of the Indiana Constitution, and violates the Due Process Clause of the Federal Constitution and the Due Course of Law Clause in the Indiana Constitution. Layman and Sparks also argue that a mandatory minimum sentence of forty-five years for juveniles convicted of felony murder violates the Eighth Amendment prohibition against cruel and unusual punishment, and a penalty range of forty-five to sixty-five years for reckless behavior resulting in death violates the Proportionality Clause of the Indiana Constitution.

However, a challenge to the constitutionality of criminal statutes must generally be raised by a motion to dismiss before trial, and the failure to do so forfeits the issue on appeal. Adams v. State, 804 N.E.2d 1169, 1172 (Ind. Ct. App. 2004). The policy reasons for this rule, which include the preservation of judicial resources, the opportunity for a full development of the record, the utilization of trial court fact-finding expertise, and the assurance of a claim being tested by the adversary process, apply with particular force where the claim is a constitutional one. Endres v. Indiana State Police, 809 N.E.2d 320, 322 (Ind. 2004) (declining to address claim of state constitutional right to religious freedom where the record and arguments were not sufficiently developed for this Court to decide important issue of Indiana constitutional law).

Here, Layman and Sparks both failed to file a motion to dismiss, and they did not object to the constitutionality of the statutes at trial. As a result, Layman and Sparks may not

challenge the constitutionality of these statutes for the first time on appeal, and these constitutional issues are forfeited.  See Plank v. Community Hospitals of Indiana, Inc., 981 N.E.2d 49, 55 (Ind. 2013) (holding that Plank forfeited the opportunity for a hearing to develop his constitutional challenges where he did not preserve his claim).

## II.  Felony Murder

Layman and Sparks also argue that Indiana Code Section 35-42-1-1, the felony murder statute, was not properly applied in this case.  The gravamen of this argument is that Johnson's death was not reasonably foreseeable to Layman and Sparks, which is a challenge to the sufficiency of the evidence.

When we review the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of the witnesses.  Glenn v. State, 999 N.E.2d 859, 861 (Ind. Ct. App. 2013).  We consider only the probative evidence and the reasonable inferences supporting the verdict.  Id.  The evidence is sufficient if it permits a reasonably drawn inference that supports the verdict.  Id.  The conviction will be affirmed unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt.  Id.

Indiana Code section 35-42-1-1(2) provides that a "person who . . . kills another human being while committing or attempting to commit . . . burglary . . . commits murder, a felony."  The State need not prove intent to kill, only the intent to commit the underlying felony.  Exum v. State, 812 N.E.2d 204, 207 (Ind. Ct. App. 2004), trans. denied.  In Palmer v. State, 704 N.E.2d 124, 126 (Ind. 1999), our supreme court held that the statutory language "kills another human being while committing" does not restrict the felony murder provision

7

only to instances in which the felon is the killer, but may also apply equally when the felon contributes to the death of any person. The <u>Palmer</u> court used this interpretation of the felony murder statute to affirm Palmer's conviction for the death of his co-perpetrator who was shot and killed by a law enforcement officer. <u>Id.</u> Specifically, our supreme court explained as follows:

> Our Court of Appeals has correctly observed: "[A] person who commits or attempts to commit one of the offenses designated in the felony-murder statute is criminally responsible for a homicide which results from the act of one who was not a participant in the original criminal activity. Where the accused reasonably should have . . . foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation which would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation of such a dangerous situation is an intermediary, secondary, or medium in effecting or bringing about the death of the victim. There, the situation is a mediate contribution to the victim's killing.

<u>Id.</u> (citing <u>Sheckles v. State</u>, 684 N.E.2d 201, 205 (Ind. Ct. App. 1997). <u>See</u> <u>also</u> <u>Jenkins v. State</u>, 726 N.E.2d 268 (Ind. 2000) (affirming Jenkins' felony murder conviction where co-perpetrator was shot and killed by robbery victim).

Here, Layman, Sparks and three co-perpetrators participated in a home invasion to commit a burglary. Four of the perpetrators broke down Scott's back door while Sparks watched for the police or visitors to Scott's house. The victim of an unlawful entry of or attack on his dwelling fighting back with deadly force is a natural consequence that has been justified by our State's legislature. <u>See</u> I.C. § 35-41-3-2. In addition, our State Constitution gives the people a right to bear arms for the defense of themselves. Indiana Constitution Article I, § 32. For these reasons, it was reasonably foreseeable that the victim's acts of self-

8

defense or defense of his dwelling were likely to create a situation leading to the death of one of the co-perpetrators. See Exum, 812 N.E.2d at 208.

To the extent that Layman and Sparks ask us to overturn Palmer and Jenkins, we decline the invitation. It is not this Court's role to reconsider or declare invalid decisions of our Supreme Court. Horn v. Hendrickson, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005). Indiana Supreme Court precedent is binding upon us until it is either changed by that court or by legislative enactment. Dragon v. State, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), trans. granted then grant of trans. denied.

### III. Sentences

Layman and Sparks also argue that their sentences are inappropriate. A defendant convicted of felony murder faces a sentencing range of forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3. The trial court sentenced Layman to fifty-five years, and Sparks to fifty years.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d

9

1219, 1222-225 (Ind. 2008); <u>Serino v. State</u>, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. <u>Cardwell</u>, 895 N.E. 2d at 1225.

Although senseless, the murder in this case is not particularly heinous. <u>See</u> <u>Brown v. State</u>, 10 N.E.3d 1, 5 (Ind. 2014). There is no evidence that the victim was tortured or beaten or lingered in pain. <u>See</u> <u>id.</u> Further, the evidence reveals that this is the first offense for which Layman and Sharp were charged as adults. Both young men have previously been under informal supervision in juvenile court. Although this does not reflect favorably upon their character, their offenses were not particularly serious and were not related to the murder in this case. <u>See</u> <u>id.</u> at 6.

In addition, although the record reflects that the young men have a history of marijuana usage, where adolescents are the victims of addiction, this fact does not necessarily indicate bad character. <u>See</u> <u>id.</u> Rather, a juvenile offender's difficult upbringing, which can include early drug and alcohol use, can serve to diminish the juvenile's culpability and weigh in favor of a lesser sentence. <u>Id.</u> (citing <u>Graham v. Florida</u>, 560 U.S. 48, 92 (2010)). Further, Layman was only sixteen and Sparks was only seventeen at the time of the crime. "Sentencing considerations for youthful offenders – particularly for juveniles – are not coextensive with those for adults." <u>Id.</u> (quoting <u>Miller v. Alabama</u>, 132 S. Ct. 2455, 2469 (2012). It is therefore necessary to consider an offender's youth and its attendant characteristics both at initial sentencing and on appellate review. <u>Brown</u>, 10 N.E.3d at 6-7.

Lastly, we note that after Quiroz pled guilty, the trial court sentenced him to the fifty-five-year advisory sentence and suspended ten years to probation. However, the trial court sentenced Layman to fifty-five years and Sparks to fifty years. We can discern no difference in the relative culpability of the three defendants and their respective roles in this crime. The only difference we discern is that Quiroz pled guilty and Layman and Sparks exercised their constitutional right to a jury trial. It is constitutionally impermissible for a trial court to impose a more severe sentence because the defendant chose to stand trial rather than plead guilty. Walker v. State, 454 N.E.2d 425 (Ind. Ct. App. 1983).

Based on the foregoing, we conclude that Layman's and Sparks' sentences are inappropriate. Like Quiroz, ten years of Layman's sentence should be suspended to probation and five years of Sparks' sentence should be suspended to probation.

## IV. Sufficiency of the Evidence

Lastly, Sparks argues that there is insufficient evidence to support his felony murder conviction because he did not enter the house. However, Sparks, whose cursory argument is less than a page long, cites no cases in support of his claim. Sparks has therefore waived this issue on appeal. See Indiana Appellate Rule 46(A)(8)(a) (stating that each argument must be supported by citations to authorities, statutes, and the appendix or parts of the record on appeal relied on); Smith v. State, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) (holding that an issue is waived when a party fails to provide adequate citation to authority), trans. denied.

Waiver notwithstanding, we find sufficient evidence to support Sparks' conviction. As previously stated, when reviewing sufficiency of the evidence claims, we consider only

11

the evidence most favorable to the verdict and all reasonable inferences that can be drawn therefrom. Exum, 812 N.E.2d at 207. If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. Id.

Here, Sparks claims that "[n]o evidence at trial could lead to the conclusion that [Sparks] had anything at all to do with the burglary which constitutes the underlying charge for this felony murder conviction. [Sparks] did not enter the house." Sparks' Br. p. 19. However, our review of the evidence reveals that Sparks participated in the crime by knocking on the doors of the targeted victims. Sparks also functioned as a "lookout" who remained outside Scott's house with a cell phone so that he could warn the young men if the police or another visitor arrived at Scott's house. A "lookout" is an accomplice to the crime and subject to being tried as a principal. Terry v. State, 545 N.E.2d 831, 831 (Ind. 1989). See also Exum, 812 N.E.2d at 208 (holding that defendant who was not the leader of the robbery, was not carrying a firearm, and may not have been in the apartment when his accomplice died, was criminally liable for the actions of his co-perpetrators). There is sufficient evidence to support Sparks' felony murder conviction.

**Conclusion**

Layman and Sparks forfeited appellate review of their constitutional claims because they failed to raise them at trial. The felony murder statute was properly applied in this case, and there is sufficient evidence to support Sparks' conviction. However, we remand this

cause to the trial court with instructions to issue an amended sentencing order consistent with this opinion.

Affirmed and remanded.

MAY, J., concurs in result with separate opinion.

KIRSCH, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

BLAKE LAYMAN,                          )
                                       )
    Appellant-Defendant,           )
                                       )
          vs.                  )    No.  20A04-1310-CR-518
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-.Plaintiff,           )
                                       )
LEVI SPARKS,                           )
                                       )
          vs.                  )
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee.                      )

**MAY, Judge, concurring with opinion (separate)**

While I reluctantly agree a jury could find Layman and Sparks guilty of felony murder even though neither they nor their accomplices killed anyone, I write separately to address whether Layman and Sparks waived the constitutional issues they raise. I write also to express my serious concerns about the felony murder statute and how it was applied in the case before us, and to suggest an approach to its application that I believe is more in line with recent Indiana and United States Supreme Court decisions.

14

1.     <u>The Statutory Language</u>

I note initially that the language of the felony murder statute suggests the legislature did not intend it to be applied to a situation like that before us, where the killing was committed by one resisting the felony and not by any defendant. That statute provides: "A person who . . . kills another human being while committing or attempting to commit . . . burglary . . . commits murder, a felony." Ind. Code § 35-42-1-1. Neither Layman nor Sparks killed another human being while committing their burglary.

In his separate opinion in *Palmer v. State*, 704 N.E.2d 124 (Ind. 1999), Justice Sullivan said: "I do not believe that our statutes authorize the imposition of liability for murder where the defendant's co-perpetrator is the victim." *Id.* at 128 (Sullivan, J., concurring in part and dissenting in part). Palmer was attempting to help Robert Williams escape from the custody of law enforcement, and a correctional officer killed Williams in the course of the attempted escape. Justice Sullivan noted "Palmer here did not kill another human being; his co-perpetrator was killed by a law enforcement official. Under the terms of the felony murder statute, Palmer is not guilty of felony murder." *Id.*

The *Palmer* majority held otherwise, however, and affirmed Palmer's conviction: "The statutory language 'kills another human being while committing' does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person." *Id.* at 126.

15

Layman, Sparks, and *amici* argue persuasively that we should reconsider *Palmer*, but we may not accept their invitation to do so. Indiana Supreme Court precedent is binding on us until it is changed by that court or by legislative enactment. *Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), *trans. denied*. Indiana Appellate Rule 65(A) authorizes us to criticize existing law, but it is not our role to "reconsider" Supreme Court decisions. *Id.*

2. Waiver of Constitutional Issues

I cannot agree that Layman and Sparks forfeited their challenges to the constitutionality of their sentences or of the statute pursuant to which they were tried in adult court and not juvenile court. We may address constitutional issues that were not raised below, and it is appropriate to do so in this case.

In *Morse v. State,* 593 N.E.2d 194, 197 (Ind. 1992), *cert. denied sub nom. Morse v. Hanks*, 528 U.S. 851 (1999), our Indiana Supreme Court said, "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court." In *Plank v. Cmty. Hospitals of Indiana, Inc*., 981 N.E.2d 49, 53 (Ind. 2013), that Court clarified that

> appellate review presupposes that a litigant's arguments have been raised and considered in the trial court. To abandon that principle is to encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later -- if the outcome is unfavorable -- claiming that the course followed was reversible error." Declining to review an issue not properly preserved for review is essentially a "cardinal principal [sic] of sound judicial administration.

(quoting *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring).

16

But the *Plank* Court then noted appellate courts have long exercised discretion to address the merits of a constitutional claim notwithstanding waiver. It concluded: "Essentially, *Morse* stands for the proposition that appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived. And indeed a reviewing court may exercise its discretion to review a constitutional claim on its own accord." *Id*. at 53-54.

I would exercise that discretion in this case. Layman and Sparks have raised important issues that have not been addressed by our courts and those issues deserve our consideration.

3.      Application of Felony Murder Statute to Juveniles

In companion cases *Brown v. State*, 10 N.E.3d 1 (Ind. 2014), and *Fuller v. State*, 9 N.E.3d 653 (Ind. 2014), our Indiana Supreme Court summarized recent United States Supreme Court statements regarding the culpability of juvenile offenders. Those decisions addressed whether the sentences imposed on fifteen-year-old Fuller and sixteen-year-old Brown were inappropriate.

After noting the Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision when the sentence is inappropriate in light of the nature of the offense and the character of the offender, *Brown*, 10 N.E.3d at 6, the Court addressed the effect of juvenile status on the character of each defendant. In Brown's case, the Court said:

> Finally -- and most significantly -- Brown was only sixteen years old at the time of the crime. We take this opportunity to reiterate what the United

17

States Supreme Court has expressed: Sentencing considerations for youthful offenders -- particularly for juveniles -- are not coextensive with those for adults. *See Miller v. Alabama,* __ U.S. __, 132 S. Ct. 2455, 2469, 183 L. Ed.2d 407 (2012) (requiring the sentencing judge to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" (footnote omitted)). Thus, both at initial sentencing and on appellate review it is necessary to consider an offender's youth and its attendant characteristics.

In holding death sentences and mandatory life without parole sentences for those under the age of eighteen to be unconstitutional, the United States Supreme Court has underpinned its reasoning with a general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments. *See Graham* [*v. Florida,* 560 U.S. 48, 68 (2010)]. This presumption that juveniles are generally less culpable than adults is based on previous and ongoing "'developments in psychology and brain science'" which "'continue to show fundamental differences between juvenile and adult minds'" in, for instance, "'parts of the brain involved in behavior control.'" *Miller,* 132 S. Ct. at 2464 (quoting *Graham,* 560 U.S. at 68, 130 S. Ct. 2011). The Supreme Court has discerned "three significant gaps between juveniles and adults." *Id.* First, "[a]s compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility.'" *Graham,* 560 U.S. at 68, 130 S. Ct. 2011 (quoting *Roper v. Simmons,* 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed.2d 1 (2005) (quotation omitted)). Second, "they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure,'" *id.,* (quoting *Roper,* 543 U.S. at 569, 125 S. Ct. 1183), and "they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings." *Miller,* 132 S. Ct. at 2464 (alteration in original) (quoting *Roper,* 543 U.S. at 569, 125 S. Ct. 1183). Finally, "a child's character is not as 'well formed' as an adult's . . . and his actions [are] less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Id.* (alteration in original) (quoting *Roper,* 543 U.S. at 570, 125 S. Ct. 1183). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Graham,* 560 U.S. at 68, 130 S. Ct. 2011 (alteration in original) (quoting *Roper,* 543 U.S. at 573, 125 S. Ct. 1183). Even justices not finding categorical Constitutional violations in these juvenile cases agree with this precept. *See Graham,* 560 U.S. at 90, 130 S. Ct. 2011 (Roberts, C.J., concurring in the judgment) ("*Roper*'s conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases."); *Roper,* 543 U.S. at 599, 125 S. Ct. 1183 (O'Connor, J., dissenting) ("It is beyond cavil that juveniles as a class are

generally less mature, less responsible, and less fully formed than adults, and that these differences bear on juveniles' comparative moral culpability.").

\* \* \* \* \*

Similar to a life without parole sentence, Brown's 150 year sentence "'forswears altogether the rehabilitative ideal.'" *Miller,* 132 S. Ct. at 2465 (quoting *Graham,* 560 U.S. at 74, 130 S. Ct. 2011). Indeed, Brown's sentence essentially "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the [juvenile] convict, he will remain in prison for the rest of his days.'" *Graham,* 560 U.S. at 70, 130 S. Ct. 2011 (quoting *Naovarath v. State,* 105 Nev. 525, 779 P.2d 944, 944 (1989)).

10 N.E.3d at 7-9. The *Brown* court affirmed Brown's convictions and remanded so the trial court could issue an amended sentencing order. It reached the same result in *Fuller* after conducting the same analysis of juvenile culpability. But, significantly, the Court did not instruct the trial court to impose on Brown the same revised sentence it instructed the trial court to impose on Fuller:

In the case of sixteen-year-old Brown we employed our collective sense of what was an appropriate sentence and determined he "should receive an enhanced sentence of sixty years for each count of murder to be served concurrently and an enhanced sentence of twenty years for robbery to be served consecutively, for a total aggregate sentence of eighty years imprisonment." *Brown,* [10 N.E.3d at 8]. We believe Fuller is entitled to a sentence revision as well. But we are not inclined to revise Fuller's sentence to be precisely the same, or even less than that of his cohort. Although only a year older than Fuller, Brown unlike Fuller was an accomplice -- a factor that we found particularly important. Instead Fuller was one of the actual shooters.

*Fuller*, 9 N.E.3d at 658-59. As noted above and in the lead opinion, in the case before us neither Layman nor Sparks was "the actual shooter" and neither could be characterized as an "accomplice" to the person who carried out the shooting except under the most expansive definition of that term.

19

In light of the rationale expressed by the Indiana and United States Supreme Courts as summarized in *Brown* and *Fuller*, I agree that Layman's and Sparks' sentences were inappropriate. But I believe the *Brown* and *Fuller* reasoning is instructive in the case before us, not just as pertains to their sentences, but also as to the basis for their culpability for felony murder.

Felony murder has been called "one of the most controversial doctrines in the field of criminal law." *See* Erwin S. Barbre, Annotation, *What felonies are inherently or foreseeably dangerous to human life for purposes of felony-murder doctrine*, 50 A.L.R.3d 397 (1973). That is because the primary function of the doctrine is to relieve the prosecution of the necessity of proving, and the jury of the necessity of finding, actual malice on the part of the defendant in the commission of the homicide. *Id.* In other words, under the felony-murder doctrine, the malice involved in the perpetration or attempted perpetration of the felony is "transferred" or "imputed" to the commission of the homicide so that the accused can be found guilty of murder even though the killing is accidental. *Id.*

One limitation of the felony-murder doctrine is that it applies only to felonies that are inherently or foreseeably dangerous to human life. *Id.* It is that "foreseeability" standard that concerns me in the case before us, where the defendants are not adults. In Indiana, the State need not prove that the defendant's acts were the sole cause of death, only that the acts contributed, whether mediately or immediately, to the victim's death. *Sheckles v. State*, 684 N.E.2d 201, 205 (Ind. Ct. App. 1997), *trans. denied.* "Mediate" means "[t]o act as the

intermediary or medium in effecting, bringing about, communicating, transferring, or the like." *Id*. (quoting Webster's New International Dictionary 1526 (2d ed. 1943)).

In light of the above definitions, a person who commits or attempts to commit an offense designated in the felony-murder statute is criminally responsible for a homicide that results from the act of one who was not a participant in the original criminal activity. *Id*. Where the accused reasonably should have foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation that would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation of such a dangerous situation is a mediate contribution to the victim's killing. *Id*.

Layman's and Sparks' automatic waiver into adult court subjected them to that reasonable foreseeability standard, and that raises concerns about the way we apply the felony murder statute to juveniles. Some juveniles convicted of felony murder did not kill and did not intend to kill. *Arrington v. State,* 113 So. 3d 20, 24 (Fla. Dist. Ct. App. 2012) *review denied*, 104 So. 3d 1087 (Fla. 2012). That appears to be the case with Layman and Sparks. "Foreseeability is a more complex issue, but it is reasonable to conclude that some juveniles involved as principals to murder or in felony murders did not foresee that a death was a possible outcome of their conduct." *Id*.

Subjecting a juvenile who did not kill or intend to kill anyone to a murder prosecution in adult court based solely on the premise it was "foreseeable" to the juvenile that someone might be killed is problematic because juveniles do not "foresee" like adults do. As

21

explained above, *Fuller*, *Brown*, and a number of recent decisions from the United States Supreme Court have expanded on what has long been recognized -- that the thought processes of adults and juveniles are fundamentally different and the justice system generally should not treat juveniles the same as adults. Therefore, "from a moral standpoint it would be misguided to equate the failings of a minor with those of an adult." *Roper*, 543 U.S. at 570. Further, defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers. *Graham*, 560 U.S. at 69.

I am concerned that our application of the tort-like "foreseeability" standard to juveniles waived into adult court and tried for felony murder is inconsistent with the reasoning our Indiana Supreme Court applied to sentencing review in *Fuller* and *Brown* and the United States Supreme Court decisions cited therein. The inherent differences between children and adults have been recognized in decisions applying tort standards similar to foreseeability. For example, in a determination whether a suspect is "in custody" for *Miranda* purposes, a child's age might affect how a reasonable person in a suspect's position would perceive his or her freedom to leave -- that is, a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go. *J.D.B. v. N. Carolina*, __ U.S. __, 131 S. Ct. 2394, 2403 (2011). "We think it clear that courts can account for that reality without doing any damage to the objective nature of the custody analysis." *Id*.

These distinctions are not new:

The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them. *See*, *e.g.,* 1 W. Blackstone, Commentaries on the Laws of England 464 - 465 (hereinafter Blackstone) (explaining that limits on children's legal capacity under the common law "secure them from hurting themselves by their own improvident acts"). Like this Court's own generalizations, the legal disqualifications placed on children as a class—*e.g.,* limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent -- exhibit the settled understanding that the differentiating characteristics of youth are universal. Indeed, even where a "reasonable person" standard otherwise applies, the common law has reflected the reality that children are not adults. In negligence suits, for instance, where liability turns on what an objectively reasonable person would do in the circumstances, "[a]ll American jurisdictions accept the idea that a person's childhood is a relevant circumstance" to be considered.

\* \* \* \* \*

As this discussion establishes, "[o]ur history is replete with laws and judicial recognition" that children cannot be viewed simply as miniature adults.

*Id. at* 2403-04. The imposition of an adult "foreseeability" standard on juveniles prosecuted in adult court for felony murder reflects a disregard for that "history [of] judicial recognition that children cannot be viewed simply as miniature adults." *Id.* at 2404.

Courts in other jurisdictions have recognized a partial solution to that dilemma. In considering the applicability of the felony-murder rule where, as here, the killing is committed by someone resisting the felony, numerous courts have adopted the view that for a defendant to be held guilty of murder, it is necessary that the act of killing be that of the defendant, and for the act to be his, it is necessary that it be committed by him or by someone acting in concert with him. *See, e.g.*, Erwin S. Barbre, Annotation, *Criminal Liability where Act of Killing is Done by One Resisting Felony or Other Unlawful Act Committed by Defendant*, 56 A.L.R.3d 239 (1974). That approach is referred to as the "agency approach,"

23

and it renders the felony-murder rule inapplicable where, as in the case before us, the killing is done by one resisting the felony. *Id.* The other approach, which Indiana courts have followed in cases involving adult felony murder defendants, permits a conviction where, as here, any death is a foreseeable consequence of the felon's acts, even if the killing is the result of a non-participant's actions. It is referred to as the "proximate cause" theory. *Id.*

I acknowledge that our courts have not adopted the agency approach where the defendant is an adult, but I have found no decision that would foreclose application of that approach to a juvenile defendant. Adoption of the agency approach for juveniles would be consistent with our Supreme Court's statement in its *Fuller* sentencing analysis: "Although only a year older than Fuller, Brown unlike Fuller was an accomplice -- a factor that we found particularly important. Instead Fuller was one of the actual shooters." *Fuller*, 9 N.E.3d at 658-59.

As the lead opinion's outcome in the case before us is permitted by existing Indiana law, I must concur in the result. But I believe application of the agency approach to prosecutions of juvenile felony murder defendants, even though such defendants are subject to adult court jurisdiction, offers an approach more consistent with the spirit of *Brown* and *Fuller* than the "proximate cause" approach required by *Palmer* for adult felony murder defendants.

# IN THE
# COURT OF APPEALS OF INDIANA

BLAKE LAYMAN,     )

    Appellant-Defendant,    )

       vs.    )

STATE OF INDIANA,    )

    Appellee-Plaintiff.    )

    and    )    No.    20A04-1310-CR-518

LEVI SPARKS,    )

    Appellant-Defendant,    )

       vs.    )

STATE OF INDIANA,    )

    Appellee-Plaintiff.    )

**KIRSCH, Judge,** *dissenting*

    In *Palmer v. State*, 704 N.E.2d 124 (1999), our Supreme Court was presented with the question whether a kidnapper in the commission of a kidnapping commits felony murder

under the Indiana murder statute when a law enforcement officer kills the accomplice of the person committing the kidnapping. It held that under the circumstances then before the court, the kidnapper committed felony murder. *Id*. at 125.

A year later in *Jenkins v. State*, 726 N.E.2d 268, 271 (Ind. 2000), the Court upheld a felony murder conviction arising from a robbery where the "defendant and his co-perpetrator engaged in dangerously violent and threatening conduct and that their conduct created a situation that exposed persons present to the danger of death."

In both *Palmer* and *Jenkins*, the defendants were (1) armed and (2) engaged in dangerously violent and threatening conduct when they committed the underlying felony. In *Palmer,* the defendant pointed a loaded and cocked handgun at the head of a police officer and fired it, injuring the officer. In *Jenkins,* the armed defendant and his co-perpetrator tied up the two victims and were in the process of murdering one of them when one of the victims got loose, picked up a gun and shot and killed the co-perpetrator.

In both *Palmer* and *Jenkins*, the Court concluded that the defendants' conduct clearly raised the foreseeable possibility that the intended victim might resist or that law enforcement would respond and thereby created a risk of death to persons present and that the defendant's felonious conduct was the mediate or immediate cause of the co-perpetrator's death.

Here, by contrast, sixteen-year old Blake Layman and seventeen-year old Levi Sparks were (1) unarmed and (2) attempting to commit a non-violent burglary of what they believed was an unoccupied residence. The defendants here were attempting to commit a non-violent crime when the unforeseeable tragedy giving rise to this case unfolded.

Because the circumstances here are very different from those before the Court in *Palmer* and *Jenkins*, I respectfully dissent from my colleagues' conclusion that Indiana Code section 35-42-1-1, the felony murder statute, was properly applied in this case.