## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 17 2019, 8:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathan Cureton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 17, 2019

Court of Appeals Case No.
19A-CR-1056

Appeal from the LaPorte Superior
Court

The Honorable Michael S.
Bergerson, Judge

Trial Court Cause No.
46D01-1810-MR-7

**Bradford, Judge.**

# Case Summary

[1] Following an attempted robbery gone bad, Nathan Cureton was charged with and convicted of felony murder and Level 3 felony attempted robbery. Cureton was sentenced to a sixty-year term in relation to the murder and a fifteen-year term in relation to the attempted robbery. The trial court ordered that the sentences run concurrently.

[2] On appeal, Cureton contends that (1) the evidence is insufficient to sustain his murder conviction, (2) his convictions for both murder and attempted robbery violate the principles of double jeopardy, and (3) his sixty-year sentence is inappropriate. The State concedes that Cureton's convictions for both murder and attempted robbery violate the principals of double jeopardy but argues that the evidence is sufficient to sustain Cureton's murder conviction and that Cureton failed to demonstrate that his sixty-year sentence is inappropriate. We agree with the State. We therefore affirm in part and vacate in part.

# Facts and Procedural History

[3] On October 4, 2018, Cureton and his girlfriend Monica Harden went to the Blue Chip Casino where Cureton "lost all of [his] money." State's Ex. 38 14:55–57. In order to make his money back, Cureton decided to commit a robbery by "strong arm[ing]" a drug dealer and stealing either money or a large amount of marijuana that he could later resell. State's Ex. 38 1:55:14. Cureton contacted Faris Daikhi and asked to purchase marijuana. Daikhi indicated that

he was not selling but that Tyler Abbott "ha[d] the weed." State's Ex. 38 1:58:36.

[4] Daikhi sent Abbott a Snapchat message indicating that Cureton "wanted to buy a pound of marijuana." Tr. Vol. III p. 68. Abbott added Cureton on Snapchat and received a message indicating that Cureton "had marijuana to sell." Tr. Vol. III p. 70. After Abbott indicated that he was not interested in purchasing marijuana from Cureton, the conversation shifted to Cureton purchasing "a pound of marijuana" from Abbott. Tr. Vol. III p. 70. Abbott went to South Bend to acquire the marijuana after Cureton agreed to purchase it for $1400.

[5] At some point, Cureton shared his plan to rob Abbott with Nathaniel Havis. Havis indicated that he "wanted in," but Cureton initially insisted that he would act alone. State's Ex. 38 1:49:28. However, after noticing on Snapchat that Abbott was a mixed-martial-arts ("MMA") fighter, Cureton asked Havis if he still wanted to participate in the robbery. Havis responded that "he was gonna go get his gun." State's Ex. 38 2:01:11. This made Cureton nervous, so he instructed Havis not to do "anything crazy" and "not to shoot." State's Ex. 38 2:04:03–07. Cureton instructed Havis to only use the gun to make Abbot drop the bag of drugs so that "no one [would] get hurt." State's Ex. 38 2:07:52. While going over the details of the plan with Havis, Cureton noticed that Havis was either high or intoxicated.

[6] Cureton suggested a location to complete the transaction. Abbott's friend, Ryan, drove him to the location to meet up with Cureton. Before Abbott and

Ryan arrived, Cureton suggested a different location. Cureton claims that at some point, he informed Abbott that he did not have enough cash to complete their transaction but that he had "lean" to give him in exchange for the marijuana.[1] State's Ex. 38 2:24:58.

[7] After arriving at the second location, Cureton hid behind a nearby garage while Havis approached Abbott and directed him into an alley. Havis put a gun against the back of Abbott's head and said "don't move or I'll f****n' kill you." Tr. Vol. III p. 79. Abbott "put his hands up" as Havis "grabbed [him] by the back of [his] neck" and "[p]roceeded to kind of try to usher [him] down the alley." Tr. Vol. III p. 81. As Havis was ushering Abbott down the alley, he kept the gun pointed at Abbott's midsection and repeated his threat to kill Abbott. At some point, Abbott decided to "go for the gun" by turning around and grabbing Havis's wrists. Tr. Vol. III p. 81. A scuffle ensued, with Abbott eventually knocking the gun out of Havis's hand. As Abbott grabbed the gun, Havis dove for Abbott's legs and tried to tackle him. Abbott fired one shot before running away. Cureton emerged from his hiding spot after Abbott fled, attempted to help Havis, and called 911. Havis later died as a result of the gunshot wound.

---

[1] Cureton later explained to investigating officers that "lean" was synthetic heroin and that the lean that he had was not real.

[8] While paramedics tended to Havis, responding officers spoke with Cureton. Cureton told officers that Havis was purchasing "toochie."[2] State's Ex. 37 0:24–30. Cureton said that he was standing next to Havis and something went wrong and "the dude shot him." State's Ex. 37 3:10. Cureton indicated that he did not know who the shooter was. Believing that Cureton was a witness to the shooting, officers transported Cureton to the Michigan City Police Department to take a statement.

[9] Once at the police station, Officer Timothy Richardson interviewed Cureton. Initially, Cureton denied any knowledge of the identity of the shooter or the circumstances surrounding the shooting. After Officer Richardson confronted Cureton with the fact that he thought Cureton was not being honest, Cureton admitted that he set up the drug deal and planned to rob Abbott with Havis's help.

[10] On October 5, 2018, the State charged Cureton with felony murder and Level 3 felony attempted robbery. Following trial, the jury found Cureton guilty as charged. The trial court entered judgements of convictions on each count. On April 25, 2019, the trial court sentenced Cureton to sixty years for the felony murder conviction and fifteen years for the attempted robbery conviction. The

---

[2] At trial, "toochie" was described as "fake marijuana," *i.e.*, "tobacco that is sprayed with multiple different chemicals to give the same high as marijuana." Tr. Vol. IV p. 34.

trial court ordered that the sentences run concurrently, for an aggregate sixty-year sentence.

# Discussion and Decision

## I. Sufficiency of the Evidence

Cureton contends that the evidence is insufficient to sustain his felony murder conviction. "Our standard of review for challenges to the sufficiency of the evidence is well-settled." *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015).

> We do not reweigh evidence or reassess the credibility of witnesses when reviewing a conviction for the sufficiency of the evidence. We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (internal citation and quotation omitted). This is because the factfinder, and not the appellate court, "is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness's testimony[.]" *Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017) (internal quotation and brackets omitted).

"A person who … (2) kills another human being while committing or attempting to commit … robbery … commits murder, a felony." Ind. Code §

35-42-1-1. "A felony murder conviction requires proof of intent to commit the underlying felony but not of intent to kill." *Glenn v. State*, 884 N.E.2d 347, 355 (Ind. Ct. App. 2008), *trans. denied*. "The felony murder rule applies when, in committing any of the designated felonies, the felon contributes to the death of *any* person." *Dalton v. State*, 56 N.E.3d 644, 648 (Ind. Ct. App. 2016) (internal quotations and brackets omitted, emphasis in original). "Thus, it matters not whether the death caused is that of the intended victim, a passerby, or even a co-perpetrator." *Id.* (internal quotation and brackets omitted).

[13]     A person who commits or attempts to commit one of the felonies designated in the felony-murder statute is criminally responsible for the death of another during the commission of said crime when the accused reasonably should have foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation which would expose another to the danger of death. Where the death that occurs could reasonably have been foreseen, the creation of such a dangerous situation is an intermediary, secondary, or medium in effecting or bringing about the death of the victim. There, the situation is a mediate contribution to the victim's killing. The question therefore is whether the defendant's conduct caused or contributed to the victim's death or set in motion a series of events that could reasonably be expected and did, in fact, result in his death.

*Id.* (internal quotations and brackets omitted). "Furthermore, a person is subject to conviction for felony murder based on accomplice liability for the underlying offense." *Luna v. State*, 758 N.E.2d 515, 517 (Ind. 2001).

[14]   In challenging his conviction, Cureton argues that the evidence is insufficient evidence to prove that he could have reasonably foreseen that the attempted robbery would expose Havis to a risk of death. We disagree. The Indiana Supreme Court has noted that "opinions of this Court are filled with tales of drug possession and dealing that spun out of control and erupted into violence." *Polk v. State*, 683 N.E.2d 567, 571 (Ind. 1997). Likewise, a victim of a forcible felony "fighting back with deadly force is such a natural consequence that it has been justified by our State's legislature." *Exum v. State*, 812 N.E.2d 204, 208 (Ind. Ct. App. 2004) (citing Ind. Code § 35-41-3-2), *trans. denied*.

[15]   The record reveals that despite the fact that Cureton hid behind a garage at the time of the attempted robbery and shooting, Cureton was an active participant in the encounter. He set up the drug deal, planned the attempted robbery, and, after learning that Abbott was a trained MMA fighter, invited Havis to assist him in committing the robbery. Cureton also knew that Havis was armed at the time of the attempted robbery and claims to have told Havis not to shoot Abbott. The fact that Cureton felt the need to tell Havis not to shoot Abbott indicates that Cureton understood that violence erupting during the encounter was a possibility. As such, we conclude that Cureton should have reasonably foreseen that gunfire might breakout during the attempted robbery of Abbott.

Cureton's claim to the contrary amounts to an invitation for this court to reweigh the evidence, which we will not do.[3] *See Walker*, 998 N.E.2d at 726.

## II.  Double Jeopardy

The State concedes that Cureton's convictions for both felony murder and attempted robbery violate the principals of double jeopardy.  As the State acknowledges, "[i]t is a violation of double jeopardy principles to convict and sentence a defendant for both felony murder and the underlying felony because the conviction for felony murder would necessarily require proof of the underlying felony."  *Stewart v. State*, 945 N.E.2d 1277, 1285 (Ind. Ct. App. 2011), *trans. denied*.  "When we determine that two convictions contravene double jeopardy principles, we may eliminate the violation by vacating either conviction."  *Jenkins v. State*, 726 N.E.2d 268, 271 (Ind. 2000).  We therefore vacate Cureton's attempted-robbery conviction.  *See id.* (providing that the court may remedy a double jeopardy violation by vacating the conviction that has less severe penal consequences).

## III.  Appropriateness of Sentence

Cureton contends that his sixty-year sentence is inappropriate in light of the nature of his offense and his character.  Indiana Appellate Rule 7(B) provides

---

[3] We are unpersuaded by Cureton's reliance on *Layman v. State*, 42 N.E.3d 972 (Ind. 2015).  In *Layman*, a group of juveniles committed a burglary during the commission of which one of the co-perpetrators was shot and killed by the homeowner.  *Id.* at 974.  Layman was charged with felony murder.  Notably, unlike in this case, none of the co-perpetrators were armed during the commission of the underlying crime.  *Id.* at 979. This fact alone is sufficient to distinguish *Layman* from the instant case.

that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[18] Cureton appeals the sentence imposed in relation to his conviction for felony murder, an undoubtedly serious crime. While Cureton did not fire the shot that killed Havis, Cureton planned to rob a known drug dealer during a purported purchase of over $1000 worth of drugs and invited Havis to participate in the robbery. In planning the robbery, which was intended to help Cureton recoup his recent losses at a casino, Cureton chose to disregard the obvious dangers to which he subjected himself, Abbott, and Havis. Cureton knew that Havis was armed when Havis approached Abbott and watched as Havis used his weapon in his attempt to complete the robbery. He also stood by as Abbott and Havis fought over Havis's gun and watched as Abbott shot Havis.

[19] As for his character, Cureton has shown a pattern of disdain for the laws of this State. Cureton, who was twenty-two at the time of the instant offense, had

amassed a lengthy criminal history. He had five referrals to the juvenile court and was adjudicated to be a delinquent child in three of those five cases. His contact with the criminal justice system continued as an adult with multiple arrests, misdemeanor and felony convictions, and probation violations. He had also repeatedly failed to appear for court proceedings and, at the time of his sentencing, had a felony case pending in Porter County. Cureton did not dispute the trial court's observation that he had been "living in a thug world for many, many years." Tr. Vol. IV p. 143. In addition, the Indiana Risk Assessment System labels Cureton as a "VERY HIGH" risk to reoffend. Appellant's App. Vol. II p. 219.

[20] In arguing that his character warrants a reduced sentence, Cureton relies heavily on his assertion that he did not intend for anyone to get hurt during the robbery and the fact that he attempted to aid Havis and called 911. While Cureton may not have intended for anyone to get hurt during the robbery, he moved forward with the robbery knowing that there was a risk that violence could erupt. He also initially lied to police about the circumstances surrounding the shooting, claiming not to know anything despite being the individual who had planned the robbery and set the proverbial wheels in motion. He has also displayed violent tendencies and has failed to show remorse for his actions. Cureton has failed to convince us that his sixty-year sentence is inappropriate.

[21] The judgment of the trial court is affirmed in part and vacated in part.

Robb, J., and Altice, J., concur.