ATTORNEYS FOR APPELLANT
BLAKE LAYMAN
Cara Schaefer Wieneke
Joel C. Wieneke
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEY FOR APPELLANT
LEVI SPARKS
Vincent M. Campiti
Nemeth Feeney Masters & Campiti, P.C.
South Bend, Indiana

ATTORNEYS FOR AMICI CURIAE
JUVENILE LAW CENTER, CENTER ON
WRONGFUL CONVICTIONS OF YOUTH
AND CHILDREN'S LAW CENTER, INC.
Scott F. Bieniek
Jeffrey A. Boggess, P.C.
Greencastle, Indiana

Marsha Levick
Juvenile Law Center
Philadelphia, Pennsylvania

ATTORNEYS FOR AMICI CURIAE
INDIANA PUBLIC DEFENDER COUNCIL
Joel M. Schumm
Indianapolis, Indiana

Matthew Hayes
Danielle Teagarden
Shea Thompson
Certified Legal Interns
Indianapolis, Indiana

Larry Landis
Indiana Public Defender Council
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General

Joseph Ho
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 20S04-1509-CR-548

BLAKE LAYMAN,

                                                    *Appellant (Defendant below),*

                        v.

STATE OF INDIANA,

                                                    *Appellee (Plaintiff below).*
                    _____

LEVI SPARKS,

                                                    *Appellant (Defendant below),*

                        v.

STATE OF INDIANA,

                                                    *Appellee (Plaintiff below).*

                    _____

                        Appeal from the Elkhart Circuit Court
                            No. 20C01-1210-MR-7
                                20C01-1210-MR-5
                        The Honorable Terry C. Shewmaker, Judge
                    _____

        On Petition To Transfer from the Indiana Court of Appeals, No. 20A04-1310-CR-518
                    _____

                            **September 18, 2015**
                                **Corrected**

**Rucker, Justice.**


        In this consolidated appeal juvenile cohorts Blake Layman and Levi Sparks challenge their convictions for felony murder in the perpetration of a burglary. We remand this cause to the trial court for further proceedings.


                            **Facts and Procedural History**


        On the morning of October 3, 2012 sixteen-year-old Blake Layman and seventeen-year-old Levi Sparks were present at the home of sixteen-year-old Jose Quiroz. At some point, the

                                        2

trio discussed committing burglary in the neighborhood. They decided to search for a house where the residents were away because they were aware that the presence of a homeowner during a burglary could result in injuries and more severe legal consequences. Sparks knocked on the door of the first house targeted. When the juveniles heard dogs barking they ran away. Someone was home at the second house they targeted.

Believing no one was home at the time, the juveniles finally settled on the house across the street from where Quiroz lived, which belonged to Rodney Scott. They then contacted their friends, eighteen-year-old Anthony P. Sharp, Jr., and twenty-one-year-old Danzele Johnson, to "help to get into the house." Tr. at 925. Unbeknownst to them, however, Scott was actually asleep in an upstairs bedroom. Unarmed, the group proceeded to break into Scott's house. While Sparks stayed at Quiroz's house serving as a lookout, Layman, Johnson, Sharp, and Quiroz entered Scott's home by kicking in the rear door to the kitchen. Scott was awakened when he heard a "boom, and [his] whole house just shook." Tr. at 1058. After hearing a second loud boom, Scott immediately grabbed his handgun and cell phone and ran loudly downstairs to scare away any intruders. When Scott reached the bottom of the stairs he saw Sharp run out the back door. He then saw three of the intruders standing near a downstairs bedroom door. Scott began firing his weapon and Layman, Johnson, and Quiroz ran into the bedroom closet. Scott then held the young men at bay in the closet and called 911. While Scott was on the phone the closet door opened and Scott saw Johnson fall to the floor. Quiroz, whom Scott recognized as a neighbor, told Scott that Johnson had been shot. Shortly thereafter Layman yelled that he also had been shot.

When the police arrived, Quiroz attempted to flee. He ran out of the closet and crashed through a glass window. One of the officers pursued Quiroz on foot and he was soon after taken into custody. In the meantime other officers entered the house and arrested Layman who was treated for a gunshot wound to his leg. Johnson's body was found on the bedroom floor just outside the closet. He died at the scene from a gunshot wound. Scott's wallet and watch, which were previously located on the kitchen counter, were retrieved from the closet in which Layman, Johnson, and Quiroz had been hiding.

3

The State charged Layman, Sparks, Quiroz, and Sharp with felony murder in the perpetration of a burglary. And although Layman, Sparks, and Quiroz were juveniles[1] the State filed the charges directly in the criminal court because the "juvenile court does not have jurisdiction over an individual for an alleged violation of . . . murder" where "the individual was at least sixteen (16) years of age at the time of the alleged violation." I.C. § 31-30-1-4(a) (2012). Over defense objections, Layman, Sparks, and Sharp were tried jointly. Quiroz pleaded guilty as charged and received a fifty-five-year sentence with ten years suspended to probation. He testified at the co-defendants' jury trial which began August 19, 2013, at the conclusion of which the jury found each of the defendants guilty as charged. Thereafter the trial court sentenced Layman and Sharp to fifty-five years and sentenced Sparks to fifty years.

In a consolidated appeal, Layman and Sparks raised several constitutional claims.[2] In addition they also contended: (1) the felony murder statute was incorrectly applied in this case; and (2) their sentences were inappropriate. Separately, Sparks argued that because he never entered the house the evidence was insufficient to support his conviction. Concluding the felony murder statute was properly applied and rejecting Sparks' separate claim, the Court of Appeals, in a divided opinion with each judge writing separately, affirmed the convictions but revised the sentences such that ten years of Layman's sentence was suspended to probation and five years of Sparks' sentence was suspended to probation for executed terms of forty-five years—the same

---

[1] "A juvenile court has exclusive original jurisdiction . . . in the following: (1) Proceedings in which a child, including a child of divorced parents, is alleged to be a delinquent child under IC 31-37." Ind. Code § 31-30-1-1(1). Indiana Code section 31-37-1-1 provides: "A child is a delinquent child if, before becoming eighteen (18) years of age, the child commits a delinquent act described in this chapter."

[2] Specifically Layman proposed: (1) "Is Indiana's direct-filing statute unconstitutional on its face because it violates a juvenile defendant's state and federal constitutional right to due process of law? If not on its face, is Indiana's direct-filing statute unconstitutional as applied in this case, given that the boys' intent and their actions constituted unarmed burglary, an offense that requires a hearing be held before waiver to adult court[;]" (2) "Based on what is now known about adolescent brain development and its effect on juvenile criminal activity, is Indiana's direct-filing statute unconstitutional because it denies juveniles equal protection provided under the Fourteenth Amendment to the U.S. Constitution, and privileges and immunities guaranteed by the Indiana Constitution's Article 1, Section 23[;]" (3) "Does Indiana's imposition of a mandatory minimum sentence of 45 years for juveniles convicted of felony murder constitute cruel and unusual punishment and run afoul of the Eighth Amendment[;]" and (4) "Does a penalty range of 45 to 65 years for reckless behavior resulting in death violate the Proportionality Clause of the Indiana Constitution?" Br. of Layman at 2-3. Sparks' constitutional claims are essentially the same. See Br. of Sparks at 1.

sentence imposed on co-defendant Quiroz. Layman v. State, 17 N.E.3d 957 (Ind. Ct. App. 2014). In the lead opinion, Judge Bailey declined to address Appellants' constitutional claims on the grounds they were not raised at trial and were thus forfeited. In a concurring opinion, Judge May addressed some aspects of Appellants' constitutional claims concluding they had not been forfeited. In dissent, Judge Kirsch concluded that our felony murder statute was not properly applied in this case. We now grant transfer thereby vacating the Court of Appeals' opinion. See Ind. Appellate Rule 58(A).

## Discussion

### I.

On transfer Layman and Sparks advance many of the same constitutional claims raised before the Court of Appeals. We decline to address them for two reasons. First, neither party raised these claims at trial. They are thus waived for appellate review. It is certainly the case that "appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived." Plank v. Cmty Hosps. of Indiana, Inc., 981 N.E.2d 49, 53-54 (Ind. 2013). Indeed "a reviewing court may exercise its discretion to review a constitutional claim on its own accord." Id. at 54. But we decline to exercise any discretion here because the very breadth and scope of Appellants' claims demand further development on an evidence-based trial record. The theme woven throughout Appellants' arguments is that juveniles are different from adults and thus should be treated differently. And as the State correctly points out, Appellants are seeking to rewrite Indiana's felony murder statute to accommodate defendants with alleged diminished capacity; see Br. of Layman at 10-13; Br. of Sparks at 5-6; and they also advance the argument that trial courts should impose alternative sentences below the range imposed for murder when the facts of a murder warrant a finding of "recklessness." See Br. of Layman at 40-41; Br. of Sparks at 28. Setting aside that such sweeping revisions are best left to the Legislature, we are of the view that judicial intervention to address constitutional claims for the first time at the appellate level is not appropriate, especially here where for the most part Appellants' claims are dependent on potentially disputed facts. See, e.g., Br. of Layman at 21-22 (challenging the constitutionality of the direct filing statute on an "as applied" basis); Br. of Sparks at 12-14 (same); Br. of Layman at 9, 10-13 (challenging the

constitutionality of the direct filing statute on grounds of adolescent brain development and its effect on juvenile criminal activity); Br. of Sparks at 5-7 (same).

Second, and more importantly, it is long established that "a constitutional question unnecessary to a determination of the merits should not be decided." Bureau of Motor Vehicles v. Scott, 497 N.E.2d 557, 559 (Ind. 1986) (quoting Passwater v. Winn, 229 N.E.2d 622, 623 (Ind. 1967)); accord Hammond City Ct. v. State ex rel. Hofbauer, 208 N.E.2d 682, 684 (Ind. 1965)); see also Greene v. Holmes, 166 N.E. 281, 284 (Ind. 1929) ("The Supreme Court will not consider constitutional questions when the determination thereof is not necessary to dispose of the appeal."). Indeed it is "the duty of the court not to enter upon the consideration of a constitutional question where the court can perceive another ground on which it may properly rest its decision." Scott, 497 N.E.2d at 559 (quoting Applegate v. State ex rel. Bowling, 63 N.E. 16, 18 (Ind. 1902)). As discussed in more detail below the propriety of the Appellants' convictions may be resolved on non-constitutional grounds.

## II.

Indiana Code section 35-42-1-1(2) (2012) provides in relevant part: "A person who kills another human being while committing or attempting to commit . . . burglary . . . commits murder, a felony." We had occasion to apply this statute in Palmer v. State, 704 N.E.2d 124 (Ind. 1999). In that case a parolee had recently been released from jail after being apprehended on a new charge. Summoned to report to his parole officer and expecting to be arrested, the parolee asked the defendant to accompany him. At the parole office, correctional officers attempted to arrest and handcuff the parolee. When the parolee resisted and attempted to escape, the defendant produced a gun, held it to the head of one of the officers, and said, "I'm going to blow you away. Do what I tell you." Id. at 125. Upon defendant's command to do so, the parolee was released. He then told the defendant to shoot the officer. When the officer heard the defendant's gun cock, he grabbed the gun's barrel. A struggle ensued, and the defendant fired his weapon striking the officer in the hand. A fellow officer then fatally shot the parolee.

Among other offenses the defendant was charged with and convicted of felony murder in the perpetration of a kidnapping. This Court in a three to two decision held that the statutory language "kills another human being while committing" does not restrict the felony murder statute solely to instances in which the felon is the killer. Palmer, 704 N.E.2d at 126. Rather, the felony murder statute may also apply equally when, in committing any of the designated felonies, the felon, although not the killer, reasonably should have foreseen that his felonious conduct would result in the "mediate or immediate cause" of the victim's death. Id.

Appellants invite us to revisit and overrule Palmer and instead adopt the view expressed by the dissenting Justices in that case, namely, that a plain reading of the felony murder statute does not authorize the imposition of liability for murder where the defendant's fellow perpetrator was the person killed. As the dissent opined:

> Our felony murder statute provides: "A person who . . . kills another human being while committing or attempting to commit . . . kidnaping [sic] . . . commits murder, a felony." Ind. Code § 35-42-1-1. Palmer here did not kill another human being; his co-perpetrator was killed by a law enforcement official. Under the terms of the felony murder statute, Palmer is not guilty of felony murder.

Palmer, 704 N.E.2d at 128 (Sullivan, J., concurring in part and dissenting in part; joined by Shepard, C.J.).

We decline the invitation to overrule Palmer. First, it has been the law in this jurisdiction now for over a decade and a half. And we have since affirmed its validity on two occasions. See Forney v. State, 742 N.E.2d 934, 938 (Ind. 2001) (noting, "[t]he fact that the robbery resulted in the death of a co-perpetrator does not save Forney from criminal liability for murder"); Jenkins v. State, 726 N.E.2d 268, 269-70 (Ind. 2000) (rejecting defendant's contention that felony murder statute does not impose criminal liability for murder when resulting death is that of co-perpetrator). The doctrine of *stare decisis* requires that we apply "a principle of law which has been firmly established." Marsillett v. State, 495 N.E.2d 699, 704 (Ind. 1986). It is a maxim of judicial restraint supported by compelling policy reasons of continuity and predictability that we should be "reluctant to disturb long-standing precedent," Id., and "a rule which has been

7

deliberately declared should not be disturbed by the same court absent urgent reasons and a clear manifestation of error." Id. at 704-05. Although Layman and Sparks disagree with Palmer and direct our attention to jurisdictions that take a different view on the proper application of the felony murder rule, we perceive no urgent reason to revisit our long-standing precedent nor are we convinced that Palmer is clearly erroneous.

Further, Appellants' contention that the dissenting view in Palmer more accurately reflects the correct reading of Indiana's felony murder statute is at odds with the fact that in the years since Palmer was decided the Indiana Legislature has amended the felony murder statute on at least four occasions,[3] but has not done so in a way that undermines this Court's consistent interpretation of the statute. "It is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation." DePuy, Inc. v. Farmer, 847 N.E.2d 160, 168 (Ind. 2006) (quotation omitted). It is of course permissible to revisit judicial authority interpreting a statute. However "if a line of decisions of this Court has given a statute the same construction and the legislature has not sought to change the relevant parts of the legislation, the usual reasons supporting adherence to precedent are reinforced by the strong probability that the courts have correctly interpreted the will of the legislature." Study v. State, 24 N.E.3d 947, 953 (Ind. 2015) (quotation omitted), petition for cert. filed (U.S. June 4, 2015) (No. 15-5866); see also Exum v. State, 812 N.E.2d 204, 208 n.4 (Ind. Ct. App. 2004) (rejecting alternative interpretation of the felony murder statute declaring, "we apply the interpretation that was given the felony murder statute by the majority of our supreme court in Palmer, and our legislature has seemingly acquiesced to that interpretation by not rejecting it"). Thus, both the doctrines of *stare decisis* as well as legislative acquiescence counsel against overruling our existing precedent in this area of the law.

---

[3] See P.L. 17-2001; P.L. 151-2006; P.L. 173-2006; P.L. 1-2007.

**III.**

Layman and Sparks also contend the felony murder statute was not properly applied in this case. Br. of Layman at 9 ("Indiana's felony murder statute was not applicable in this case. . . . Prior precedent from our Supreme Court holding otherwise should be overruled or, in the alternative, should not be followed with juveniles, given that they are incapable of foreseeing the risks inherent in their actions."); Br. of Sparks at 24-25 ("When a co-felon is killed by a non-participant, there is no dispute over whether the non-participant, and not an intervening cause, was the reason for the co-felon's death. Rather, the issue is whether the defendant should be held criminally responsible for the actions of another."). The essence of their argument is that the death of their friend and co-perpetrator was not reasonably foreseeable. We view this claim as a challenge to the sufficiency of the evidence. "In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses." Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010). "Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict, and we will affirm the convictions if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

The evidence is clear that Layman, Sparks, and three co-perpetrators participated in a home invasion.[4] Intending to commit theft—a felony—four of the perpetrators broke down the homeowner's back door and entered the house while Sparks served as a lookout. In consequence, one of the co-perpetrators was fatally wounded. There is no question that the evidence is sufficient to sustain a burglary conviction.[5]

In any event, although we affirm the continued validity of Palmer and its progeny, the facts in those cases are significantly different from the facts here. In Palmer, for example,

---

[4] We summarily affirm that portion of the Court of Appeals opinion disposing of Sparks' claim that the evidence is insufficient to sustain his conviction because he never entered the homeowner's house.

[5] See Indiana Code section 35-43-2-1, which provides in relevant part: "A person who breaks and enters the building or structure of another person, with the intent to commit a felony in it, commits burglary, a Class C felony."

although the defendant engaged in kidnapping—one of the felonies designated in the felony murder statute—he did so while pointing "a loaded and cocked handgun at the head of [an officer] and thereafter fired it, injuring the officer." Palmer, 704 N.E.2d at 126. We explained that "[s]uch *conduct* clearly raised the foreseeable possibility that the intended victim might resist or that law enforcement would respond, and thereby created a risk of death to persons present. *This felonious conduct was clearly 'the mediate or immediate cause' of [his accomplice's] death.*" Id. (emphasis added).

In like fashion we affirmed the felony murder conviction for the death of a co-perpetrator during the course of a robbery in Jenkins. The evidence in that case showed that "the defendant held a gun to [robbery victim's] stomach, . . . defendant and [co-perpetrator] then taped [victim's] ankles together and his hands behind his back, . . . defendant retrieved [victim's] girlfriend[] from the second level of the apartment, . . . defendant handed the gun to [co-perpetrator], and the defendant taped [victim's girlfriend's] eyes, mouth, and hands and instructed her to sit in a chair [after which] defendant then took a spoon from a kitchen drawer and heated it, threatening to torture the two victims." Jenkins, 726 N.E.2d at 270. Accordingly, we concluded "the defendant and his co-perpetrator *engaged in dangerously violent and threatening conduct and that their conduct created a situation that exposed persons present to the danger of death at the hands of a non-participant who might resist or respond to the conduct* . . . and that the defendant's role in creating this dangerous situation, which included the use of at least two guns during the episode, was an intermediary, secondary, or medium in effecting or bringing about the death." Id. at 271 (emphasis added) (internal quotation omitted).

Similarly, in Forney we affirmed the defendant's felony murder conviction based on accomplice liability where, in the perpetration of a robbery, the defendant instructed his co-perpetrator to "get the money by saying, 'get the scrill get the scrill.'" Forney, 742 N.E.2d at 936. Upon which, the co-perpetrator pulled out a gun, pointed it at the stomach of the intended robbery victim and said, "Shut up, empty your pockets." Id. A struggle over the gun ensued. The co-perpetrator fired the weapon, striking another co-perpetrator in the chest who died as a result.

Aside from the fact that in each case a co-perpetrator was fatally injured by someone other than the defendant, the common thread uniting Palmer, Jenkins, and Forney was that an armed defendant engaged in violent and threatening conduct, either as a principle or an accessory, that resulted in the "mediate or immediate cause" of a co-perpetrator's death. By contrast the record here shows that when the group broke and entered the residence of the homeowner intending to commit a theft—a burglary—not only were they unarmed, but also neither the Appellants nor their cohorts engaged in any "dangerously violent and threatening conduct." Jenkins, 726 N.E.2d at 271. There was simply nothing about the Appellants' conduct or the conduct of their cohorts that was "clearly the mediate or immediate cause" of their friend's death. Palmer, 704 N.E.2d at 126. Thus, while the evidence is sufficient to sustain a conviction for the underlying burglary, it is not sufficient to sustain a conviction for felony murder in the perpetration of a burglary. Accordingly, we reverse Layman's and Sparks' convictions for felony murder.

But what next? For reasons that are unclear from the record before us the State did not follow common practice and file an additional count of burglary against the defendants. It chose instead to file a single count of felony murder in the perpetration of a burglary. Nonetheless, "the completed or attempted underlying felony is always a lesser included offense of felony murder. Therefore, charging a person with felony murder also, in effect, necessarily charges him with the underlying felony." Douglass v. State, 466 N.E.2d 721, 722-23 (Ind. 1984) (quotation and citation omitted).

Here the underlying felony is burglary which may be enhanced from a class C to a class B felony "if[] the building or structure is a . . . dwelling" and to a class A felony "if it results in[] bodily injury; or[] serious bodily injury; to any person other than a defendant." I.C. § 35-43-2-1 (2012). At first blush it would appear the Appellants should be resentenced for burglary as a class A felony, based on the "serious bodily injury" to co-perpetrator Johnson.[6] Neither our

---

[6] We say "at first blush" expressing no opinion whether Johnson was a defendant for purposes of the statute and thus whether the injury he suffered precludes class A felony enhancement based on the "any person *other than a defendant*" provision.

11

<u>Richardson</u> double jeopardy jurisprudence[7] nor our longstanding common law prohibits this outcome.[8] However, here the charging information sets forth the elements of burglary as a class B felony. It provides in relevant part that the parties "did kill another human being, to wit: Danzele J. Johnson, while committing or attempting to commit the felony of Burglary, I.C. 35-43-2-1(1)(B)(i), that is to knowingly break and enter into the residential dwelling of another person with the intent to commit the felony of Theft therein . . . ." App. at 9. In similar fashion by agreement of the parties the trial court instructed the jury on the elements of class B felony burglary noting in part:

> If you find that any Defendant(s) did not commit the crime of Felony Murder as alleged, but the Defendant, Anthony P. Sharp, Jr., Levi L. Sparks, or Blake R. Layman did commit the crime of Burglary, a Class B felony, a lesser-included offense by:
>
> 1. knowingly
> 2. breaking and entering
> 3. a residential dwelling of Rodney Scott
> 4. with the intent to commit a felony inside, to-wit: the crime of theft then and in that event you may convict any defendant of the lesser-included crime of Burglary, a Class B felony.

---

[7] In <u>Richardson v. State</u>, 717 N.E.2d 32 (Ind. 1999), we explained that two or more offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." <u>Id.</u> at 49. But we clarified, "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." <u>Spivey v. State</u>, 761 N.E.2d 831, 833 (Ind. 2002). Double Jeopardy is not implicated here because only a single element—death—is common to both felony murder and burglary as a class A felony.

[8] We have held that where a single act forms the basis for both an enhanced felony conviction and also the act element of the murder conviction, the two cannot stand. <u>Kingery v. State</u>, 659 N.E.2d 490, 495-96 (Ind. 1995); <u>Logan v. State</u>, 729 N.E.2d 125, 136 (Ind. 2000) (vacating class A felony robbery conviction noting the same evidence supporting murder conviction—death of the victim—was also used to elevate the robbery conviction from a class C to a class A felony); <u>see also</u> <u>Guyton v. State</u>, 771 N.E.2d 1141, 1143 (Ind. 2002) (declaring that enhancement of one offense for the very same harm as another is not permissible) (<u>citing</u> <u>Richardson</u>, 717 N.E.2d at 56 (Ind. 1999) (Sullivan, J., concurring)). And in the case before us only one bodily injury formed the basis for felony murder as well as class A felony burglary as a lesser included offense, namely, the fatal wound from a gunshot. However, because we have vacated the felony murder conviction the common law rule that prohibits elevating the burglary conviction based on the same bodily injury forming the basis for the murder conviction is not applicable.

12

App. at 69. In fact the verdict form given to the jury provided three choices: "Guilty of Felony Murder," "Guilty of Burglary, a Class B felony, a lesser-included offense," and "Not Guilty." App. at 94. Essentially all parties understood and agreed that the un-charged lesser-included offense in this case was burglary as a class B felony. We thus remand this cause with instructions to enter verdicts of guilty to burglary as a class B felony and resentence the Appellants accordingly.

## Conclusion

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

Rush, C.J., and Dickson, David and Massa, JJ., concur.