

FILED

Jun 26 2018, 7:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry P. Prouse, III,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 26, 2018<br><br>Court of Appeals Case No.<br>84A04-1710-CR-2270<br><br>Appeal from the Vigo Superior<br>Court<br><br>The Honorable Michael J. Lewis,<br>Judge<br><br>Trial Court Cause No.<br>84D06-1608-MR-2268 |

**Altice, Judge.**

### Case Summary

[1] Larry P. Prouse, III, appeals his convictions for murder, Level 4 felony arson, Level 6 felony abuse of a corpse, and Level 6 felony altering the scene of a death. On appeal, Prouse contends that his dual convictions for arson and

altering the scene of death constitute double jeopardy in violation of Article 1, Section 14 of the Indiana Constitution. He also asserts fundamental error with respect to certain testimony of a deputy fire marshal.

[2] We affirm.

## Facts & Procedural History

[3] Late in the evening of August 20, 2016, Prouse picked up Ashley McMickle from her friend Shawn Roberts's house and drove her to McDonald's. They returned about thirty minutes later and hung out with Roberts for a bit. Prouse and McMickle then left in Prouse's truck.

[4] Prouse and McMickle turned up at Leona and James Crowley's home sometime after midnight, purportedly with a man known only as Opie. Leona is Prouse's mother and James is his step-father. They did not know McMickle or Opie but allowed them into the home. Over the next several hours, everyone except Leona – who was painting signs in another room – hung out in the living room of the small home and used methamphetamine together. At Prouse's request, Leona provided him with a knife from her tool box that he used to fashion a meth pipe out of a lightbulb. McMickle eventually fell asleep on one end of the sectional couch where they were sitting.

[5] Sometime after 5:00 a.m., Prouse stabbed McMickle in the neck as she slept. She woke and attempted to fight off Prouse, but he overpowered her and continued stabbing her. James watched Prouse stab McMickle multiple times

and then hit her with a baseball bat. Leona saw him stab McMickle in the shoulder, and unsuccessfully pleaded with Prouse to stop.

[6] Opie ran out the front door during the attack, followed by the Crowleys' dog and then Leona. James went out the back door and started yelling for the dog. Leona and the dog eventually returned to the fenced-in backyard. In the meantime, Prouse dragged McMickle's dead body out of the house and onto the back patio. Prouse then threatened James and told him to leave with Leona. The Crowleys walked to Leona's mother's house, arriving around 6:30 a.m. James took a shower and then stepped out on the porch, when a man drove up and told James that his house was on fire. The man drove James and Leona to the scene.

[7] The fire had been called in at 7:09 a.m. by an off-duty firefighter, who observed the back of the home engulfed in flames. Responding firefighters found two separate fires on the property – a large burn pile in the backyard and the residence fire. After fighting the fires, responders turned their attention to the burn pile where they then found McMickle's charred remains under boards. Her left arm was relatively unaffected by the fire due to its positioning and a tarp wrapped around it. She was identified the next day by her fingerprint.

[8] Fire investigators determined that the fires were intentionally and separately set. Additionally, Terre Haute Fire Chief Norm Loudermilk opined that the fire on the burn pile was set first and likely started sometime between 6:30 a.m. and 6:50 a.m., while the house began burning around 6:50 a.m. The house fire was

set at the rear door of the house and destroyed the living room, including the sectional couch.

[9] The pathologist who performed the autopsy of McMickle determined that she died before being set on fire. McMickle's jaw was broken and six stab wounds were apparent during the autopsy – one in the neck, three to her left hand, and two to her left arm. These were mostly defensive wounds and not likely the cause of death. The pathologist determined the cause of death to be massive blood loss from a stab wound or wounds to a major blood vessel in one or more of her extremities, evidence of which was destroyed in the fire.

[10] Within a few hours of the fire, Prouse showed up at Lori Miller's home, where his ex-wife Miranda Roe and his two-year-old daughter were living. He ran inside, mumbling and rocking back and forth. He told Roe that there was a house fire. Later that day, he told Roe that he had stabbed a woman about twenty times and then burned the woman in a fire that he had started.

[11] Early the following morning, August 22, Prouse was found by police sleeping in his truck near his father's home. Roe and the child were inside the home sleeping on the floor. Further investigation revealed that Prouse had driven in a cornfield near Miller's home on the day of the fire. Investigators recovered clothing (shirt, underwear, and pants) and shoes owned by Prouse that had been discarded in that area. Testing revealed the presence of blood on the pants, as well as McMickle's DNA.

On August 26, 2016, the State charged Prouse with murder (Count I), Level 4 felony arson (Count II), Level 6 felony abuse of a corpse (Count III), and Level 6 felony altering the scene of death (Count IV). A jury found Prouse guilty as charged on June 9, 2017. Thereafter, on August 3, 2017, the trial court sentenced Prouse to sixty years on Count I, eight years on Count II, and two years on Counts III and IV. Counts III and IV were ordered to be served concurrent with each other and consecutive to the other counts, for an aggregate sentence of seventy years in prison. Prouse now appeals. Additional facts will be provided below as needed.

## Discussion & Decision

### 1. Double Jeopardy

Prouse argues that his dual convictions for arson and altering the scene of death violate Indiana's constitutional prohibition against double jeopardy, Article 1, Section 14 of the Indiana Constitution. Specifically, he contends that the same evidence was used to convict him of both offenses.

Under Indiana's Double Jeopardy Clause, a defendant may not be convicted of two offenses if "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original); *see also Layman v. State*, 42 N.E.3d 972, 980 n.7 (Ind. 2015). Our focus here is on the actual evidence used to convict Prouse of the offenses. This

analysis requires a consideration of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish all of the essential elements of the other challenged offense. *See Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002) ("the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense"). "Thus, even if 'each charge utilizes the same factual event,' no constitutional violation will be found if the second offense 'requires additional evidentiary facts establishing the essential elements.'" *Vandergriff v. State*, 812 N.E.2d 1084, 1086-87 (Ind. Ct. App. 2004) (quoting *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002)), *trans. denied*.

[15] To establish arson as charged, the State was required to prove that Prouse, by means of fire or explosion, knowingly or intentionally damaged the Crowleys' dwelling without their consent. *See* Ind. Code § 35-43-1-1(a)(1). To establish altering the scene of death as charged, the State had to prove that Prouse knowingly or intentionally altered the scene of McMickle's death, that McMickle died from violence, and that Prouse altered the scene with intent to hinder a criminal investigation and without permission of the coroner or law enforcement. *See* I.C. § 36-2-14-17(b).

[16] Double Jeopardy is not implicated here. The same factual event, the intentionally-set fire, was used in establishing both offenses. But additional evidentiary facts were required to prove both offenses. The arson conviction required evidence that the fire damaged the dwelling of another person without

the person's consent.[1]  The conviction for altering the scene of death required, among other things, evidence that McMickle had died from violence inside the home prior to the arson.  Because additional evidentiary facts were needed to establish the essential elements of each offense, both convictions may stand.

## 2.  Fundamental Error

Prouse contends that State's witness Deputy Fire Marshall Matt Holbert improperly offered an opinion as to guilt when he testified: "Uh, in my experience the only time you do something like this is to cover up something." *Transcript Vol. 3* at 116.  Acknowledging that he did not preserve the alleged error below, Prouse now asserts fundamental error to avoid waiver.

The fundamental error exception permits appellate review of otherwise procedurally defaulted claims.  *Sciaraffa v. State*, 28 N.E.3d 351, 356 (Ind. Ct. App. 2015), *trans. denied*.  This exception to the waiver rule is extremely narrow and its proponent – here Prouse – "bears the heavy burden of showing that a fair trial was impossible."  *Harris v. State*, 76 N.E.3d 137, 139 (Ind. 2017).  To meet this daunting standard, Prouse is required to "show that the trial court should have raised the issue sua sponte due to a blatant violation of basic and

---

[1] In *Mathews v. State*, 849 N.E.2d 578, 586 (Ind. 2006), our Supreme Court made clear that "damaging property is the central element of arson."  Thus, one fire can result in multiple arson convictions where properties with distinct owners are damaged.  *Id*. at 587.

elementary principles, undeniable harm or potential for harm, and prejudice that makes a fair trial impossible." *Id*. at 140.

[19] Indiana Evidence Rule 704(b) precludes witnesses from "testify[ing] to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Contrary to Prouse's assertion on appeal, Deputy Fire Marshall Holbert did not offer any opinion regarding Prouse's guilt. Indeed, Deputy Fire Marshall Holbert plainly testified that he was unable to determine who set the arson fire. He then opined, based on his experience, that the intent behind setting the fire was to "cover something up." *Transcript Vol. 3* at 116. Prouse argues in his reply brief that this testimony improperly commented on the perpetrator's intent behind setting the fires.

[20] Even assuming that this testimony violated Evid. R. 704(b)'s proscription on opinion testimony concerning intent, we find that any error did not rise to the level of fundamental error because other independent evidence overwhelmingly established that the fires were set to cover up the stabbing death. The primary focus of the State's case, as well as the defense, was who committed the crimes – not why the fires were set. Further, we observe that Prouse makes no attempt on appeal to show that a fair trial was impossible. He simply attempts to show that the testimony violated our evidentiary rules and then baldly asserts the violations "constitute[d] the 'blatant violations of basic and elementary principles of due process.'" *Appellant's Brief* at 12. The extremely narrow fundamental error exception demands more than showing only that a violation

of our evidentiary rules occurred. On the record before us, we cannot say that Deputy Fire Marshall Holbert's passing testimony indicating that whoever set the house fire did so to cover up something rendered a fair trial impossible.

[21] Judgment affirmed.

Najam, J., concurs.

Robb, J., concurs in result without opinion.