## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 27 2019, 10:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lance Fleming,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 27, 2019<br><br>Court of Appeals Case No.<br>19A-CR-47<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>The Honorable Jeffrey L. Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-1707-F3-26238 |

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, Lance Fleming was convicted of Level 3 felony attempted rape and Level 3 felony rape. Fleming presents two issues for our review:

> 1. Is the evidence sufficient to support his conviction for attempted rape by other sexual conduct?
>
> 2. Do his convictions for attempted rape and rape violate double jeopardy principles?

[2] We affirm.

## Facts & Procedural History

[3] K.J. first met Fleming in 2002 at AT&T where they both worked, and the two became friends. In 2008, they had a one-time sexual encounter. While their sexual relationship did not continue, they remained friends off and on. Fleming would often assist K.J. with projects around her house or help with her son.

[4] In October 2015, K.J. was living in Indianapolis with her nineteen-year-old son. On October 8, 2015, K.J. worked at AT&T from 1:30 p.m. to 10:00 p.m., and then she went to a second job with Labor Ready, where she was helping to remodel a Wal-Mart. K.J. worked through the night until 6:30 or 7:00 a.m. on October 9, 2015. K.J. had been having trouble with a door to her laundry room, so on her way home she called and left a message for Fleming, asking him if he could help her fix the door. Fleming called her back and told her that he would come by sometime that morning.

[5]     K.J. arrived home around 7:30 or 8:00 a.m. She changed into a nightgown and went to sleep in her bed. A short time later, K.J. was awakened by the sound of her doorbell. She went to the door and saw Fleming standing outside. When she let him in, Fleming attempted to hug her, but she "pulled away". *Transcript Vol. 2* at 18. K.J. told Fleming about the problem with the laundry room door, and Fleming told her that he had to retrieve his tools. K.J. was feeling lightheaded, so she went to her bedroom and sat down on the bed. She eventually laid down.

[6]     After returning with his tools, Fleming entered K.J.'s bedroom and told her that "he wanted [her]." *Id.* at 22. K.J. tried to roll over to the other side of her bed to get away from Fleming, but Fleming grabbed her ankle. Fleming then started taking off his clothes, and K.J. reacted by telling Fleming, "we can't do this, you're married." *Id.* Fleming got on top of K.J., raised up her nightgown, and began kissing her on the mouth and on her breasts. At some point, Fleming removed K.J.'s underwear. K.J. testified that Fleming was then "trying to go down on [her]," by which she meant attempting to perform oral sex. *Id.* at 24. Fleming was unsuccessful in placing his mouth on K.J.'s vagina because she was twisting and moving so much in an effort to get away from him. K.J. kept telling him, "I can't do this" and "[w]e can't do this." *Id.* at 25.

[7]     Fleming, who had K.J. pinned down, then forced K.J.'s legs open with his legs and inserted his penis into her vagina. K.J. continued to twist and move around, trying to get Fleming off of her. The weight of Fleming's body on top of her in addition to her asthma made it difficult for K.J. to breathe. While

struggling to breathe, K.J. kept telling Fleming "we can't do this," and "no." *Id*. at 27. Fleming eventually stopped and rolled off K.J.

[8] K.J., still in her nightgown, got up and went into the living room where she curled up in a chair and called her sister, who did not answer. Fleming remained on the bed for a few minutes before he got up and went into the living room. K.J. then went into her closet, where she felt safe, and called her boyfriend. When Fleming came back into the bedroom to retrieve his clothes, K.J. backed away and told Fleming, "you got to go, you got to go." *Id*. at 29. Fleming got dressed and left K.J.'s home. K.J. decided not to call the police because she did not want her son to come home to "the police and chaos." *Id*.

[9] After Fleming left, K.J. got dressed and went to the hospital to report the incident. She was wearing a different pair of underwear and left her nightgown at home. Before she arrived at the hospital, K.J.'s sister called her back and K.J. told her what happened. K.J.'s sister testified that K.J. was "extremely upset and she was crying" when they spoke. *Id*. at 50.

[10] At the hospital, K.J. underwent a sexual assault examination. K.J. reported to a forensic nurse that Fleming had attempted oral sex on her and that he achieved vaginal penetration with his penis. K.J. reported that Fleming might have ejaculated. During the physical examination, the forensic nurse observed four distinct injuries, consisting of lacerations and abrasions, to K.J.'s vaginal area. The forensic nurse testified that K.J.'s injuries were more consistent with forced sex than with consensual sex.

[11] Detective Fernando Cervantes of the sex crimes unit was dispatched to the hospital to investigate. Detective Cervantes met briefly with K.J. and took an initial statement. He took an evidence technician to K.J.'s home, where they took pictures and collected evidence, including K.J.'s nightgown and sheets. Detective Cervantes then located Fleming. He advised Fleming of his rights, and Fleming agreed to give a statement. Fleming admitted to knowing K.J., admitted to receiving a call from her about the needed door repair, and admitted to going to her house that morning, but he denied having any sexual contact with her.

[12] At trial Fleming testified in his own defense. He admitted that he was going to perform oral sex on K.J. and that he got "kind of close to her vagina." *Id*. at 129. Contrary to K.J.'s version of events, Fleming testified that he did not complete the act of oral sex because K.J. told him that she had "not washed yet," and so he "kind of worked [his] way back on up." *Id*. Fleming also admitted that he inserted his penis into K.J.'s vagina and testified that such was consensual. He tried to explain his prior statement to Detective Cervantes that he did not have any sexual contact with K.J. on the morning in question by asserting that he did not understand the question that was asked because he was surprised and focused on Detective Cervantes's suggestion that Fleming forced himself on K.J.

[13]     On July 17, 2017,[1] the State charged Fleming with Level 3 felony attempted rape, Level 3 felony rape, and Level 6 felony criminal confinement. On October 17, 2018, just prior to the scheduled start of Fleming's jury trial, Fleming waived his right to trial by jury, and the matter was tried to the bench. At the conclusion of the evidence, the trial court found Fleming guilty as charged and entered convictions thereon. On December 6, 2018, the trial court held a sentencing hearing. The court vacated Fleming's conviction for criminal confinement, citing double jeopardy, and sentenced Fleming to concurrent terms of five years for his Level 3 felony convictions. Fleming now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Sufficiency

[14]     Fleming argues that the evidence is insufficient to support his attempted rape conviction. When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences supporting the conviction. *Id.* We will

---

[1] The nearly two-year delay in filing of charges was because the State waited until the DNA tests came back and confirmed that swabs taken from K.J.'s external and internal genitalia and her breasts contained DNA consistent with Fleming's DNA profile.

affirm if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[15] As charged, the State was required to establish that Fleming did attempt to commit the crime of rape by knowingly or intentionally causing K.J. to submit to other sexual conduct when she was compelled by force or imminent threat of force. Ind. Code § 35-42-4-1(a)(1). As relevant here, "[o]ther sexual conduct" is defined as an act involving "a sex organ of one (1) person and the mouth or anus of another person." Ind. Code § 35-31.5-2-221.5. As the substantial step toward commission of the crime, the State alleged that Fleming "removed his clothing, then removed [K.J.]'s underwear, . . . then placed his face near [K.J.]'s vagina." *Appellant's Appendix Vol. II* at 20.

[16] Fleming argues that K.J.'s testimony that Fleming attempted to perform oral sex on her was speculative and did not constitute evidence of probative value sufficient to support his conviction for attempted rape by other sexual conduct. We disagree. We note that Fleming himself admitted that he was going to perform oral sex on K.J. and that he got close to her vagina with his mouth. This belies Fleming's claim that K.J.'s testimony that he was attempting to perform oral sex was mere speculation as to his intent to perform oral sex. According to K.J., Fleming was not successful in placing his mouth on her vagina because she was twisting and struggling as she tried to get out from underneath him. Contrary to Fleming's claim, forensic evidence was not needed to establish that Fleming attempted to force K.J. to submit to oral sex. In short, Fleming's argument is simply a request to reweigh the evidence and

assess the credibility of the witnesses, which we will not do. *See Suggs*, 51 N.E.3d at 1193. The evidence is sufficient to support Fleming's conviction for attempted rape by other sexual conduct.

## 2. Double Jeopardy

[17] The double jeopardy clause of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, section 14. The double jeopardy clause is intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Under Indiana's Double Jeopardy Clause, a defendant may not be convicted of two offenses if "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d at 49 (emphases in original); *see also Layman v. State*, 42 N.E.3d 972, 980 n.7 (Ind. 2015).

[18] Fleming argues that his alleged conduct was "described as part of one continuing incident where the alleged first offense [i.e., attempted rape by other conduct] was actually part and parcel of the second [i.e., rape by sexual intercourse]." *Appellant's Brief* at 18. Fleming thus contends that under the continuing crime doctrine, his convictions for both attempted rape and rape cannot stand.

[19] The continuing crime doctrine is a category of Indiana's prohibition against double jeopardy and applies when "actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010) (citing *Riehle v. State*, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), *trans. denied*). Where, however, the defendant is charged with two or more distinct chargeable crimes, the continuing crime doctrine does not apply. *Id.; see also Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015) ("The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime.") (quoting *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002)).

[20] In *Collins v. State*, 717 N.E.2d 108 (Ind. 1999), our Supreme Court was confronted with a situation in which different sex acts comprised multiple charges. Specifically, the defendant was convicted of two separate counts of criminal deviate conduct—one based on compelled oral sex and the other based on compelled anal sex. Both acts constituted sexual deviate conduct. As pertinent to this case, the Court rejected the defendant's argument that there was only one continuous assault because once the assault began, he paused only to reposition his victim before continuing the assault. The Court observed that "[d]istinguishing separate crimes is often difficult, particularly in cases of sexual assault." *Id*. at 110. The Court emphasized:

> We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts.

*Id.* (quoting *Brown v. State*, 459 N.E.2d 376, 378 (Ind. 1984)). Given that resolution of such claims is extremely fact-sensitive, the Court applied the actual evidence test in determining whether the offenses were the "same offense" for purposes of double jeopardy.

[21] Here, there is no dispute that the two offenses have distinct statutory elements. Our focus is thus on the actual evidence used to convict Fleming of the offenses. This analysis requires a consideration of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish all of the essential elements of the other challenged offense. *See Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002) ("[T]he Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.").

[22] Fleming's conviction for attempted rape by other sexual conduct was established by K.J.'s testimony that Fleming tried to perform oral sex on her but was unable to because of her efforts to prevent him from doing so. Fleming also testified that he was going to perform oral sex on K.J. and that his mouth was close to her vagina. Fleming's conviction for rape was established by K.J.'s testimony that Fleming pinned her down and compelled her to submit to sexual

intercourse and forensic evidence demonstrating that DNA profiles obtained during K.J.'s sexual assault examination matched Fleming's. Fleming admitted at trial that he inserted his penis into K.J.'s vagina. Fleming's convictions for attempted rape and rape were proven by separate and distinct facts. There is no double jeopardy violation.

[23] Judgment affirmed.

Kirsch, J. and Vaidik C.J., concur.