## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 17 2020, 9:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Agapito Diaz III, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | February 17, 2020 <br><br> Court of Appeals Case No. 19A-CR-1359 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Angela G. Warner Sims, Judge <br><br> Trial Court Cause No. 48C01-1711-MR-2798 |

**Najam, Judge.**

# Statement of the Case

Agapito Diaz III appeals his convictions following a jury trial for felony murder, a felony; attempted murder, a Level 1 felony; attempted armed robbery, as a Level 3 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and criminal recklessness, as a Level 5 felony. Diaz presents the following issues for our review:

> 1.  Whether his convictions for felony murder and attempted armed robbery violate double jeopardy principles.
>
> 2.  Whether his felony murder conviction can stand given that the victim's death was the result of a third party's alleged act of self-defense.
>
> 3.  Whether the trial court abused its discretion when it sentenced him.
>
> 4.  Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

During the evening of November 6, 2017, Joshua Steele went to Lindsay Dowell's house in Chesterfield. The two were on their way to Dowell's bedroom when Steele saw a gun lying on a bed in another bedroom. Steele also saw Jalynn Harman sitting on the bed near the gun. Steele asked Dowell about the gun, and she said that it belonged to her roommate, Diaz. Steele expressed an interest in buying the gun. Diaz was in the shower at that time. When he

got out of the shower, Dowell asked Diaz whether he would sell the gun Steele had seen in his bedroom, and he said no.

[4] Diaz then entered Dowell's bedroom and asked Steele whether Diaz "knew [him] from somewhere." Tr. Vol. 4 at 44. Steele denied ever having known Diaz. But then Diaz said to Steele, "I think you tried to rob me before in the past." *Id.* at 45. Steele denied Diaz' accusation, and then Steele displayed his own gun to Diaz. Diaz left the bedroom.

[5] Approximately five minutes later, Diaz and Harman entered Dowell's bedroom, and each of them was holding a gun in each hand. Diaz and Harman were pointing the guns at Steele, and Steele asked Diaz whether he would sell any of the guns to him, and Diaz said no. Diaz then said to Steele, "You tried to rob me you mother***er. You tried to rob me. You're not going nowhere. You ain't leaving here alive." *Id.* at 49. Diaz then told Steele to empty his pockets and hand over his gun. Steele did not comply, and he tried to leave the bedroom. Diaz repeated that he was going to kill Steele. Steele made his way to the bedroom door and walked toward the front door to leave. As Steele tried to unlock the door, Diaz struck him on the head with a gun.

[6] Steele then made his way toward the kitchen, and Diaz told Harman to take Steele's gun from him. But Harman was unable to disarm Steele. Steele made his way back to Dowell's bedroom, where Dowell was crying. Steele positioned himself behind Dowell so that she was between him and Diaz and Harman. Dowell pleaded with Diaz to let Steele leave, but he refused. Diaz

then told Harman to give him one of her guns so that he could shoot Steele without making as much noise. Dowell then said to Steele, "I don't think you['re] gonna make it outta here," and she left her bedroom. *Id.* at 61.

[7] Anticipating that Diaz was about to shoot him, Steele fired a few shots at Diaz and Harman. As Steele left the bedroom, Harman exclaimed that she had been shot. Diaz had also been shot. Steele finally made his way to the front door and, as he left the house, he shot in Diaz' direction. Diaz returned fire at Steele as Steele got to his car. Diaz continued to fire shots as Steele drove away. One of Diaz' bullets struck a neighbor, Michael Swinford, injuring him. Harman ultimately died as a result of her gunshot wounds.

[8] The State charged Diaz with felony murder, attempted murder, attempted robbery resulting in serious bodily injury, attempted armed robbery, unlawful possession of a firearm by a serious violent felon, and criminal recklessness. A jury found Diaz guilty as charged. The trial court entered judgment of conviction on all but the attempted robbery resulting in serious bodily injury verdict and sentenced Diaz as follows: felony murder (sixty years); attempted murder (thirty-five years); attempted armed robbery (twelve years); unlawful possession of a firearm by a serious violent felon (six years); and criminal recklessness (five years). The court ordered that Diaz' sentences for felony murder, attempted murder, and unlawful possession of a firearm would run consecutively and concurrent with the sentences for attempted armed robbery and criminal recklessness, for an aggregate term of 101 years executed. This appeal ensued.

# Discussion and Decision

## *Issue One:  Double Jeopardy*

Diaz first contends that his convictions for felony murder and the underlying felony, namely, attempted armed robbery, violate double jeopardy principles, and the State agrees.  It is well settled that "[i]t is a violation of double jeopardy principles to convict and sentence a defendant for both felony murder and the underlying felony because the conviction for felony murder would necessarily require proof of the underlying felony." *Stewart v. State*, 945 N.E.2d 1277, 1285 (Ind. Ct. App. 2011) (citing *West v. State*, 755 N.E.2d 173, 186-87 (Ind. 2001)), *trans. denied*.

Here, the State concedes that Diaz' convictions for felony murder and attempted armed robbery violate double jeopardy because both convictions are "based on [Diaz'] efforts to rob Steele[.]"  Appellee's Br. at 14.  Thus, the State avers that "[t]he appropriate remedy would be to remand to the trial court with instructions to vacate the attempted armed robbery conviction." *Id.*  We agree, and we remand and instruct the trial court to vacate Diaz' conviction for attempted armed robbery.[1]

## *Issue Two:  Felony Murder*

Diaz next contends that "felony murder should not apply when a person is not killed by either the defendant on trial or an accomplice but rather by the victim

---

[1] We note that Diaz' aggregate sentence is unaffected by the vacation of this conviction.

of the offense or some third party[.]" Appellant's Br. at 16. Diaz acknowledges that our Supreme Court has recently "refused to reconsider its holding in *Palmer v. State*, 704 N.E.2d 124 (Ind. 1999)[,] which held that felony murder was proper even though the person killed was killed by either the intended victim or another third party but not by the defendant or an accomplice." *Id.* at 15; *see Layman v. State*, 42 N.E.3d 972, 977 (Ind. 2015). And, rather than present cogent argument asking this Court to revisit our Supreme Court's precedent, Diaz states that this Court "has no authority to contravene controlling Supreme Court precedent" and that he "makes the argument . . . so that the claim is preserved for a petition to transfer." *Id.* at 16.

[12] Without citation to the record, Diaz avers that "[t]he killing of Harman by Steele was not a crime if in fact he was defending himself from an attempted robbery. Yet [Diaz] is convicted of a murder which was in fact a legal act." *Id.* Diaz ignores our Supreme Court's analysis in *Layman* reaffirming that a felony murder conviction is appropriate where "an armed defendant engaged in violent and threatening conduct, either as a principle or an accessory, that resulted in the 'mediate or immediate cause' of a co-perpetrator's death." 42 N.E.3d at 979. Here, Diaz and Harman wielded two guns each and threatened Steele, who responded by firing on Diaz and Harman, killing Harman. Diaz does not ask us to distinguish the holding in *Layman*, and the evidence does not support reversal of Diaz' felony murder conviction under that precedent.

### *Issue Three: Abuse of Discretion in Sentencing*

Diaz further contends that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (Ind. 2007)).

The sentencing range for a murder conviction is forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3 (2019). Diaz' sentence for felony murder is sixty years. The sentencing range for a Level 1 felony is twenty to forty years, with an advisory sentence of thirty years. I.C. § 35-50-2-4. Diaz' sentence for attempted murder is thirty-five years. The sentencing range for a Level 4 felony is two to twelve years, with an advisory

sentence of six years. I.C. § 35-50-2-5.5. Diaz' sentence for unlawful possession of a firearm by a serious violent felon is six years. And the sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. I.C. § 35-50-2-6. Diaz' sentence for criminal recklessness is five years.

[16] Here, at sentencing, the trial court identified the following aggravating factors: Diaz' "extensive" criminal history; multiple victims; Diaz' behavior in jail awaiting trial and in the courtroom, showing "complete disdain for authority"; and the nature and circumstances of the offenses, including the fact that these were "completely senseless crimes" that resulted in the loss of an "innocent" life. Tr. Vol. 7 at 126-127. And the court did not identify any mitigating factors.

[17] Diaz asserts that the trial court abused its discretion when it identified as aggravating circumstances his criminal history and that innocent lives were lost. We address each contention in turn.

[18] Diaz first contends that the trial court mischaracterized his "minor" criminal history as "extensive." Diaz concedes that his criminal history includes "many charges against" him, but he points out that "the only convictions shown are for cocaine sale and possession in July of 2005, resisting arrest[,] assault and battery[,] and malicious destruction of property in 2005, misdemeanor possession of marijuana in 2007, robbery in 2016, [and] robbery in 2013." Appellant's Br. at 19. Diaz suggests that the trial court improperly relied on his

history of arrests, when no disposition was determined for many of those arrests. But the trial court did not indicate that it relied on Diaz' history of arrests in identifying his criminal history as an aggravator.

[19] At sentencing, the trial court stated in relevant part as follows:

> Not only does [Diaz] have [a] criminal history, the Court would characterize the criminal history as extensive. [T]he character of the criminal history also is concerning and continues to serve as an aggravator as the criminal history continues to show behavior involving drugs, firearms and violence, which were the same issues that presented themselves in this particular case.

Tr. Vol. 7 at 126. Diaz was only thirty-two years old at the time of the instant offenses, and his criminal history included three felony convictions, two of which were for robbery, and five misdemeanor convictions, including battery and resisting arrest. We cannot say that the trial court abused its discretion when it identified Diaz' criminal history as an aggravator.

[20] Diaz also contends that the trial court improperly found that more than one person had died as a result of the instant offenses and that Harman was an "innocent" life lost. At sentencing, the trial court stated as follows:

> [L]ooking at the particular crime itself, I think the only thing that really adequately describes the events that took place on that night in November in Chesterfield in this community, completely senseless crimes. Again, it's reiteration, in our society of what those that are involved in the drug community and that carry firearms, what it escalates to and ultimately, people lose their lives. Innocent people lose their lives, that being Ms. Harman in this situation. The Court finds from the fact presented in this

case, certainly was somewhat sucked into a situation and things ran out of control extremely fast and she lost her life for it. There's nothing this Court can do today that will bring back that loss to those that loved her and cared for her. Not only were innocent lives lost, innocent members of our community were terrorized by the events that took place over there um, in Chesterfield on that night. Mr. Swinford, as he's indicated to the Court in his role and what he endured that night. Completely unacceptable behavior in this community.

*Id.* at 127-28. We cannot agree with Diaz that the trial court abused its discretion on this issue. While the trial court may have misspoke when it referred to "innocent lives lost," the court made clear that it was aware that Harman was the only victim to lose her life in this instance. *Id.* Moreover, while Harman acted in concert with Diaz in threatening Steele, the court believed that she had been "sucked into" the situation as a less-than-willing participant, and Diaz does not suggest that the evidence does not support the court's assessment. *Id.* Diaz certainly does not suggest that Harman deserved to die for her actions. Diaz' contention on this issue is without merit.

### Issue Four: Inappropriate Sentence

[21]    Finally, Diaz contends that his sentence is inappropriate in light of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has

selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[22] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[23] On appeal, Diaz contends that his sentence is inappropriate in light of the nature of the offenses and his character because the offenses "do not fall in the category of the worst" of such offenses and because Diaz does not "fall in the category of the worst offender." Appellant's Br. at 23. Diaz' argument misses the mark. First, it is of no moment that the nature of the offenses and Diaz' character are not "the worst." The trial court did not impose the maximum sentence. Second, as the trial court found, the instant offenses were "completely senseless," and Diaz initiated and escalated the violent confrontation with Steele, which resulted in Harman's death and injured a bystander. Finally, Diaz' character is reflected by his criminal history and his continued bad behavior in jail pending trial and in court during his trial. As the trial court observed, Diaz "continues to show complete disdain for authority, disdain for the order and process of this Court and for other rules and social norms that we expect others in our society to abide by." Tr. Vol. 7 at 126. We cannot say that Diaz' 101-year sentence is inappropriate in light of the nature of the offenses and his character.

[24] Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, J., and Tavitas, J., concur.